ALBANY,
Feb. 1086.

Holmes and
Drake
v.
D'Camp.

Where one of several partners dies, and the survivors continue to trade under the copartnership name, and an *account* is *stated* afterwards, by a debtor, between him and the copartnership, admitting a balance due by him, for goods sold in the life time of the deceased partner; the surviving partners may recover such balance, on an *insimul computassent*, without stating the death of the other partner, and the survivorship. The stating of the account is in the nature of a new promise to the survivors. If a negotiable note or bill of exchange, be given for a simple contract debt, the party cannot recover on the original contract, unless he shows the note to be lost, or produces and cancels it, at the trial;

J. and T. Holmes and Drake *against* D'Camp.

THIS was an action of *assumpsit*, tried before Mr. Justice *Livingston*, at the New-York sittings, the 27th day of September, 1804. The declaration contained the usual counts for goods sold and delivered, money had and received, &c. and an *insimul computassent*. The defendant pleaded *non assumpsit*, with a notice of the special matter intended to be given in evidence, under the general issue.

It appeared that the plaintiffs, and a person by the name of *Charles Holmes*, who died in May, 1801, were, for some time before, partners together in trade, under the firm of *Charles Holmes* and *Co.* that the defendant knew of the death of *Charles Holmes*, at, or about the time it happened ; and that the plaintiffs afterwards continued their business, under the same firm. The plaintiffs produced an account current, stated by the defendant, between him and *Charles Holmes* and *Co.* in which a balance of five hundred and thirty-two dollars and ninety cents, was admitted to be due to them, from the defendant, on the 21st of September, 1802. The plaintiffs, by their agent, August, 1802, made a settlement with the defendant, of an account they had against him and a person by the name of *Seymour*, trading together under the firm of *Seymour* and *D'Camp*, by taking notes for fifteen shillings in the pound, for the debt. At that time, the amount due from the defendant could not be ascertained, as it depended on the result of certain shipments, made to New-Orleans. As to the amount of that account, the defendant declared, that he wished for no deduction, and would settle it in a short time. Upon this evidence of the plaintiff, the counsel for the defendant moved for a nonsuit, on the ground, that the goods for which this action was brought, were sold in the life time of *Charles Holmes*, who was a partner, and whose name did not appear in the declaration. The judge was inclined to grant the nonsuit, but as it appeared, that the defendant, in his notice annexed to the

plea, had a defence on the merits, he thought it proper to re-serve the question.

The defendant then produced in evidence, a power of attorney given by the plaintiffs, and several other creditors of *Seymour* and *D'Camp*, dated the 26th of August, 1802, authorising *T. Dwight*, Esquire, of Hartford, to compound and agree with *Seymour* and *D'Camp*, for their respective debts, and to take such securities, for such parts thereof as he should deem best for their interests, and to execute re-leases and discharges for the same. The defendant further proved, that the attorney of the said creditors, took from one *Edward Seymour*, a mortgage, dated the 15th of Octo-ber, 1802, to *John* and *N. Griffiths*, as trustees for the plain-tiffs and the other creditors, as security for the several debts due from *Seymour* and *D'Camp*, and also for the debt for which the present action was brought, payable in three years from the first day of September, 1802. The defendant then offered to prove, that it was understood by the creditors who gave the power, that it authorised the settlement of this debt, as well as the joint debts of *Seymour* and *D'Camp*, which testimony was overruled by the Judge.

The defendant, also, produced a written paper, by which it appeared that he had, on the 19th of January, 1801, given to *Charles Holmes & Co.* his *promissory note* for the goods sold and delivered to him, for which the balance was now claimed by the plaintiffs. This proof was objected to by the plaintiffs ; but the judge observed, that if a negotiable note had been given, and was not produced, he should con-sider it as a bar to the action on the implied *assumpsit*. The plaintiffs then produced the note.

The jury found a verdict for the plaintiffs for the balance of the account with interest.

The counsel for the defendant moved to set aside the ver-dict, and that a nonsuit should be granted, for the following reasons : 1. That *Charles Holmes*, being a partner with the

Holmes and
Dr ke
v.
D'Camp.

plaintiffs, at the time the goods were sold to the defendant, his death should have been stated, and the plaintiffs have brought their action as survivors.

2. That the note ought to have been declared on.

3. Because the power of attorney and the proceedings under it, shew that this debt was secured by a mortgage, not due when the suit was commenced.

This motion was argued at the last term, by *Emott* for the plaintiffs, and *Evertson* for the defendant.

SPENCER, J. now delivered the opinion of the court. If there had been no count in the declaration on an *insimul computassent*, I should have considered the first exception as fatal, notwithstanding the cases\* cited by the counsel for the plaintiffs. On examination, those cases will be found not to contradict the proposition, that in declaring on a debt contracted with the plaintiffs and another, since deceased, his death, and the survivorship of the others should be alleged; for, otherwise, it would not appear to be the same promise.

The defendant, in September, 1802, stated an account exhibiting the balance due from him, claimed by the plaintiffs. Formerly, the stating of an account was conside ed so deliberate an act, as to preclude any examination into the items.† A greater latitude has of late prevailed, and any errors may be shewn and corrected; but still the stating of an account, is regarded as a consideration for the promise; and it is in the nature of a new promise.

Technically speaking, a negotiable note is not an extinguishment of an antecedent debt; yet it has been deemed an extinguishment *sub modo*. In the court of King's Bench,§ a negotiable note or bill of of exchange, has been held to

---

\* 2 Durnf. and East. 476. *Smith* v. *Barrow.* 5 Durnf. and East. 493. *Slipper, et alia,* v. *Stedstone.* 6 Durnf. and East. 582. *French* v. *Andrade.*

† 1 Durnf. and East. 40. *Truman* v. *Hunt.*

§ 2 Bac. Ab Debt. *(G.)* 290. Gwillim's Ed. See also, Bac. Ab. Vol. 1, p. 281, *note,* and 5 D & E. 513. *Kearslake* v. *Morgan.*

be an extinguishment of a simple contract debt, the defendant being liable to pay the money to a third person.— Though this principle is not to be found in any adjudged case, yet it is so reasonable and necessary a rule, in a commercial country, that I am disposed to adopt it, with this qualification; that where a negotiable note has been given for a prior debt, not to suffer the plaintiff to recover on the original consideration, unless he shews the note to have been lost, or produces and cancels it at the trial.

The power of attorney to Mr. *Dwight*, did not, in its terms, authorise him to compound or take security for the debt in question; and the testimony offered to prove that it did give him that authority, was of the most slender kind, the mere understanding of the general creditors of *Seymour* and *D'Camp*. The judge, at the trial, very properly rejected this evidence; and if the plaintiff will now stipulate to cancel and file with this court, the note given to them by the defendant, the present motion ought not to prevail, otherwise, I think it ought to be granted.*

Judgment for the plaintiffs.

*ALBANY, Feb. 1806.*

Holmes and Drake
v.
D'Camp.

* The counsel for the plaintiffs produced the note, cancelled, and filed it with the clerk.