NEW YORK,
October, 1814.

BEARDSLEY
v.
Root.

## MURRAY against HOUSE.

*A verbal authority to an attorney, to appear in a cause, is not sufficient to enable him to release the interest of a witness.*

## BEARDSLEY AND ANOTHER, EXECUTORS OF BEARDSLEY, *against* ROOT, GENT.

*A plaintiff's attorney, by his general authority as attorney, cannot purchase land sold under an execution issued in the cause, for the benefit of, and as trustee for, his client.*

*An action for money had and received cannot, in general, be supported, unless the defendant has, in fact, received money.*

*But where an attorney, or agent, has discharged a debt due to his principal, and applied that debt to the payment of a debt which he himself owed to his principal debtor, the amount of the debt which he has so discharged may be recovered in this form of action.*

*So where an attorney issued execution on a judgment recovered by his client, and became himself the purchaser of the land sold under the execution, and paid for the same, by discharging the judgment against the defendant, it was held that his client might maintain this action against him.*

*But, if the attorney had been authorized by his client to purchase the land in trust for him, and the attorney having made the purchase, refused to execute the trust, it seems that an action for money had and received would not lie against him.*

*It seems, that taking negotiable paper is equivalent to the receipt of money, so as to authorize the maintaining of this action.*

THIS was an action for money had and received, brought to recover money collected by the defendant, as attorney for the

plaintiffs' testator, in an action in which their testator was the plaintiff, against one *Elijah Beardsley.* The cause was tried at the *Delaware* circuit, in *June*, 1814, before Mr. Justice *Spencer.*

The defendant became the purchaser, for 1,027 dollars, of a farm in *Delhi*, in *Delaware* county, owned and possessed by *Elijah Beardsley*, and sold under several executions, and, among others, an execution issued by *Phinehas Beardsley*, the plaintiffs' testator, on a judgment for 1,200 dollars debt, and 14 dollars and 43 cents costs. (To recover from the defendant the amount due on that judgment this action was brought.) The sheriff executed a deed to the defendant, who paid to the sheriff the amount of the prior executions. The defendant's bid exceeded the amount of all the executions; and thereupon *Elijah Beardsley* gave the defendant a receipt for the overplus of his bid. The defendant discharged the executions against *E. Beardsley*, and gave him a receipt in full, but the defendant received no money thereon. Another person had, before the farm was struck off to the defendant, bid 1,026 dollars.

*Phinehas Beardsley*, the testator, lived in *Connecticut*, and did not attend the sale. The defendant, both before and after the sale, had declared (though not publicly) that he bid for the benefit of his client. One witness, however, on the part of the plaintiffs, testified that the defendant, on his being interrogated by *Elijah Beardsley*, whether, if the creditors would join and pay *Hasbrouck*, the assignee of the older executions, he would give up the farm, said that he would not, and that somebody else might as well have the speculation as the creditors. Soon after the sale, the testator came to *Delhi*, and the defendant offered that he should take the plaintiffs' deed, but he said that he was embarrassed on account of *Elijah Beardsley*, and had rather the defendant should sell the farm, and would try to send some person to buy it, and spoke of the farm as worth more than the amount of the judgment and all the encumbrances. The testator had, likewise, advertised, in a public paper, for a long time, to sell the farm at less than its real value; and one of the plaintiffs, since the testator's death, had told the defendant that he would endeavour to send some one to him to buy it.

A verdict was taken for the plaintiffs, for the amount levied upon the testator's judgment, (754 dollars,) with interest, subject

NEW YORK, to the opinion of the court; and that a nonsuit be entered if
October, 1814. the court should be of opinion that the plaintiffs were not en-
BEARDSLEY titled to recover.
v.
ROOT.

*Sherwood*, for the plaintiffs. The defendant had only a ge-
neral authority, as attorney, for the testator. There is no evi-
dence of any special authority to make the purchase for the be-
nefit of his client.

As between the defendant and his client, this must be consi-
dered as a money transaction. Whatever is accepted as money
is money, and this form of action lies wherever money is re-
ceived for the use of another. In *Barclay* v. *Gooch*,* where
a person gave a promissory note for the debt of another, which
the creditor accepted in payment, Lord *Kenyon* held it to be a
payment of so much *money* to the use of the party, for which
*assumpsit* would lie.

In *Norris* v. *Napper*,† Lord *Holt* said, that though the defend-
ant did not actually receive the money, yet he received a satis-
faction which was *money's worth*. And in *Ward* v. *Evans*,‡
where a creditor desired his debtor to pay part of the debt to a
third person, to whom the creditor was indebted, and endorse
it on a note from him to his creditor, and the debtor made the
endorsement, but without paying the money, it was held that the
third person might maintain an action against the debtor, for so
much money had and received to the use of the plaintiff. So,
in *Surtees* v. *Hubbard*,§ Lord *Kenyon* held that where one,
indebted to another, consents to pay over the money to a
third person, the latter may maintain an action of *assumpsit* for
it.

*Woodworth*, contra. The evidence in the case will warrant
the inference that the defendant acted as the agent of his client.
After the sale, there was not the least disapprobation expressed
by the plaintiffs' testator of the conduct of the defendant. It
was, therefore, a matter of fact, which the jury might well infer
from the evidence, that the defendant acted as agent. If so,
then he is clearly not liable to an action.

If, however, the plaintiffs have any remedy, it must be a spe-
cial action on the case, calling on the defendant to account.
The present form of action cannot be sustained without show-
ing that the *money* had come into his hands.

* 2 Esp. N. P. Cases, 571.

† 2 Ld. Raym. 1007.

‡ 2 Ld. Raym. 928. 6 Mod. 36. S. C.

§ 4 Esp. N. P. Cases, 203.

In *Nightingal* v. *Devisme*,\* Lord *Mansfield* held that this action would not lie for *East-India* stock, for it was not money; that it would not lie where *no money was received.* In *Longchamp* v. *Kenny,*† there was a fair presumption that the defendant had actually sold the ticket and received the money. Lord *Mansfield* said, that though great benefit might arise from the liberal extension of this form of action, yet it ought not to be carried beyond its proper limits. This court, in *Tuttle* v. *Mayo,*‡ held, that though in all cases it was not necessary to have positive proof of the money being received by the defendant, yet the facts proved must afford a fair presumption of the defendant having received the plaintiff's money.

NEW YORK,
October, 1814.

BEARDSLEY
v.
ROOT.
\*5 *Burr.*2589.
† *Doug.*137.

‡ 7 *Johns. Rep.*
132.

VAN NESS, J. delivered the opinion of the court. It may be true that the defendant intended to purchase the farm mentioned in the case, for his client; though, judging from the facts before us, it would rather seem that he bought it on his own account. The fact of taking the deed directly to himself, and not to his client, affords a more clear indication of his real intention at the time of the sale, than his declarations made before and after. But admitting that he meant to make the purchase in behalf of his principal, still, having no authority from him for that purpose, he cannot compel him, or his representatives, to accept of it. It is not pretended, that his employer gave him any express authority or direction to make the purchase for him; and no such authority was derived from his retainer to collect the debt due from *Elijah Beardsley.*

Admitting, however, for a moment, that an attorney may be justified in making a purchase in behalf of his client, when such a measure is indispensably necessary to save or secure his debt; yet this is not even a case of that description. On the sale of the farm, *Hasbrouck* offered to give within one dollar of the sum for which it was struck off to the defendant; and it is admitted by the case, that the price for which the farm was sold, exceeded the amount of all the executions in the sheriff's hands; so that there was not the least necessity for the defendant to become the purchaser, in order to secure his client's demand.

If the defendant was authorized to make this purchase on account of his principal, then the latter was bound to accept it, according to the terms upon which it was made. By these

terms, the defendant stipulated to pay the amount due to *Hasbrouck* upon his judgment, which he has actually done ; and *Phinehas Beardsley*, consequently, became liable to reimburse the defendant the money thus paid. To permit an attorney, in this way, to make his client his debtor, might frequently lead to the most injurious consequences. Many clients, instead of recovering and receiving their money according to the ordinary course of proceeding, would, unexpectedly, find themselves involved in intricate and extravagant speculations, to the management of which they might be totally incompetent ; and which, in the end, might prove ruinous.

The defendant could not make himself a trustee for his principal, against his will, and throw upon his hands a purchase which his interest did not require him to make. Suppose the farm had turned out to be worth one half the sum which the defendant gave for it, would *Phinehas Beardsley* have been obliged to take it ? If *Phinehas Beardsley* had ratified the purchase by some positive, unequivocal act, such as reimbursing the defendant the money paid to *Hasbrouck*, or agreeing to do so, he would have been bound to abide by it, however disadvantageous it might have proved. But so far from assenting to the purchase, it appears, from the defendant's own testimony, that soon after the sale, when the defendant offered him the sheriff's deed, he declined to accept it ; and, at the same time, told the defendant he was already embarrassed, on account of *Elijah Beardsley*, and preferred he should sell the farm.

It follows from what I have said, that the defendant is to be considered as a purchaser in his own right, and for his own benefit ; and not as trustee for *Phinehas Beardsley* ; and if this be true, the remaining question in this case may be easily disposed of.

The general rule indisputably is, that the action for money had and received cannot be supported, unless the defendant has actually received *money*. It has, however, been held in the *English* courts, that taking negotiable paper is equivalent to the receipt of money ; and although we have never sanctioned that doctrine by an express decision, yet, in the case of *Cumming* v. *Hackley*, (8 *Johns. Rep.* 206.) the court seem to intimate their approbation of it. But the present case stands upon different grounds. Here the attorney or agent has dis-

charged a debt due to his principal, and applied that debt to the payment and satisfaction of his own debt; for the amount of which he is liable to the plaintiff in this form of action; and so it has frequently been decided.

In the case of *Scott and others* v. *Surman and others*, (*Willes' Rep.* 400.) the plaintiffs consigned to the bankrupt, as their factor, a quantity of tar, which he sold before his bankruptcy, and it was agreed that the tar should be paid for in promissory notes, payable in four months after the delivery of the tar, and that a debt of thirty-one pounds, due from the factor to the vendees, on his own account, should be deducted. The suit was brought to recover this sum of thirty-one pounds, as well as other moneys in the hands of the defendant. The court held, that this thirty-one pounds stood just on the same footing as if the factor had received that sum *in money*, before his bankruptcy, from the vendees; and that the plaintiffs must come in as creditors under the factor's commission. The same principle was adopted by the court in deciding one of the points in the case of *Ward* v. *Evans.* (2 Ld. *Raym.* 928.) But the case of *Floyd* v. *Day*, (3 *Mass. Rep.*) is, perhaps, more fully in point; and I will, therefore, state it a little more at large. *Floyd*, the plaintiff, having a demand upon one *Pilsbury*, appointed the defendant, *Day*, his agent, to recover for her a sum of money, in satisfaction of her demand. The defendant commenced a suit against *Pilsbury*, and the matter was then compromised by *Pilsbury's* agreeing to give three hundred dollars, for a discharge from the plaintiff's demand in full. For this sum, the defendant, instead of money, took *Pilsbury's* note, payable to himself, and discharged *Pilsbury*, as he was authorized to do by the plaintiff; so that she had no remedy, except against the defendant. Upon this state of facts, the court decided, that the plaintiff could not maintain *trover* for the note; but that the defendant having, instead of money, received the note of *Pilsbury*, and discharged him, the property of the note was in the defendant, and he became immediately answerable to the plaintiff for the amount, as for " so much money received by him for her use; and an action of *assumpsit* was her proper remedy. For although the defendant received no money, yet by his transaction he discharged *Pilsbury* from the plaintiff's demand on him for money, and he must be considered as having made himself answerable to

her for the money he ought to have received of *Pilsbury*.[35] To these cases may be added that of *Denton and others* v. *Livingston*, (9 *Johns. Rep.* 96.) which was decided in conformity with the doctrine laid down in the preceding cases; and the reasons assigned by the court, in the decision of the first point, to which I particularly refer, will be found strictly applicable to this cause.

If the sheriff had demanded and received the money for which the land was sold, from the defendant, on the execution of the deed to him, there is no question he would have been perfectly justifiable in immediately paying it back again to him; and, in that case, it is not disputed, that this suit might have been supported. The sheriff, however, instead of going through the useless ceremony of first receiving the money from the defendant with one hand, and paying it back with the other, at once accomplished the same thing, by taking from him a receipt in full satisfaction of the execution. This negotiation was the same as money to the defendant. He paid his own debt with his client's judgment, and he cannot be allowed to say that *no money* came into his hands.

If the defendant had been duly authorized by his principal, to purchase the land in trust for him, and had, when required, refused to execute the trust, I agree, that the action for money had and received could not be maintained. The fact, that the purchase was not thus made, distinguishes this case from those cited by the defendant's counsel, in which it has been held that this action would not lie. In consequence of the discharge given to the sheriff, the plaintiff can never again resort to his judgment against *Elijah Beardsley* to obtain satisfaction of his demand. The defendant has had the benefit of that judgment as effectually as if he had received the money upon it, and then made use of it in the payment of any other debt he may have contracted. Suppose *Hasbrouck* had, in fact, become the purchaser, for the sum he offered for the farm, (which, it appears, was enough to pay his own judgment, as well as that of *Phinehas Beardsley*,) and the defendant, instead of receiving the money from him, and due to his client, had consented that *Hasbrouck* should set off a debt which he happened to hold against him, for an equal amount, surely in that case the defendant would not have been permitted to say, that *no money* had come into his hands.

2

I do not mean to question the authority of the cases relied upon by the defendant's counsel. The present case depends upon different principles, and is distinguishable in many respects, as will be seen by a summary consideration of some of them. Let us take, for instance, the case of *Longchamp* v. *Kenny*, (*Doug.* 136.) and suppose the plaintiff, instead of the evidence he gave in that case, had shown that he delivered the masquerade ticket to *Kenny*, the defendant, to sell, and to pay over the money to the plaintiff, and that *Kenny* had sold the ticket to some person to whom he was indebted, in a sum equal to the value of the ticket, and instead of receiving the money, had paid his debt with it, and taken a receipt in full. I think, upon such a state of facts, (which would make that and the present case analogous,) the plaintiff's right to recover upon the count, for money had and received, would have been perfectly clear. Again, take the case of *Nightingal et. al., Assignees,* &c. v. *Devisme,* (5 *Burr.* 2589.) and suppose the defendant, *Devisme,* on the same day he received the stock, had paid a debt he owed with it, and taken a discharge of the debt, (which would also have made that case like the present,) I think there would have been no question but the action for money had and received would have been sustained. While the ticket, in the first case, (putting out of view the facts from which the court presumed that *Kenny* actually received the money for the ticket,) and the stock, in the other, remained in the hands of the respective defendants, they were properly held not to be liable as for money had and received; but add to these cases the facts which I have stated, and the result, no doubt, would have been entirely different. We are of opinion, therefore, that the plaintiffs are entitled to judgment.

SPENCER, J. not having heard the argument of the cause, gave no opinion.

Judgment for the plaintiffs.