ARTCHER *vs.* McDUFFIE.

It is competent to prove the fact that a judgment which had been recovered against the plaintiff was entered up on a note received from the defendant, without producing the note.

Evidence that a person who had negotiated the sale of land to a third person, for the owner, by agreement with the latter was to have a certain portion of the proceeds of a bond and mortgage given for the purchase money, is proper, in a suit between the parties, and is a good foundation for a subsequent promise by the vendor to pay the amount.

Where a witness, after testifying to a conversation, is asked, on his cross-examination, what reason he had for remembering the conversation, and gives as a reason, a declaration made by one of the parties, at the time, no objection being made to the question by the opposite party, the counsel asking the question cannot repudiate the testimony after the witness has answered the question.

It is not competent for a defendant to prove his own declarations made when the plaintiff was not present, although they were made to a third person in a conversation which took place by the plaintiff's request.

Evidence as to the object for which a release was executed cannot be admitted for the purpose of attempting to change the legal effect of the release : but it is proper to prove that it was executed to a witness, on the trial of a cause, with the view of showing at what time it was given, and that it was not the consideration of the assignment in question, so as to take it out of the statute of frauds.

Under a count for money had and received a party cannot recover from another a sum of money which it was his duty to collect, but which he had failed to collect, by reason of an error in computation made by his attorney.

It is a general rule that the action for money had and received will only lie where money, or its equivalent, has been received by the defendant.

ERROR to the mayor's court of the city of Albany. McDuffie sued Artcher in assumpsit, and declared upon the money counts. The defendant pleaded the general issue, and gave notice of set-off. On the trial the plaintiff offered in evidence a sealed contract between the parties, dated the 8th of January, 1838, in the following words :

"In consideration of an agreement for the sale of the lot hereinafter described, made between me John Artcher of the one part and Angus McDuffie of the other part, and in consideration of a note given me dated this day, for twelve hundred and fifty dollars, with interest, by the said McDuffie

payable on the first of March, 1839, for the consideration money agreed upon for said sale, I the said John Artcher do hereby agree and covenant with said McDuffie, that on the payment of the amount due on said note, either on the said first day of March, 1839, or sooner, I will with my wife execute and deliver to said McDuffie a good and sufficient common warranty deed of the one equal undivided half of a certain lot of land situate in the town of Coeymans in the county of Albany, containing about one hundred and one acres, as the same was conveyed to said Artcher by and described in a deed dated May 16, 1837, executed by said McDuffie and wife, and recorded in book of deeds No. 58, page 19, in the office of the clerk of the city and county of Albany. And I further agree that the said McDuffie may have the immediate possession of said farm, and also have all the wood now cut and lying on said premises, and for the cutting of which said McDuffie hereby agrees to pay. And the said McDuffie further agrees, that if he shall sell or agree to sell any of the wood on said lot before the said first of March, 1839, that he will pay to said Artcher the money received on such sales, and deposit with said Artcher all contracts for such sale as security for the payment of the said note until the same is fully paid." The plaintiff then read in evidence a judgment record in favor of the Commercial Bank of Albany, against McDuffie, for $1403,19, damages and costs, docketed May 6, 1839. He then called as a witness Orlando Meads, who testified that a note of the plaintiff dated about the 8th of January, 1838, for over $1000, was passed to the witness by Artcher. The plaintiff's counsel then asked the witness, "Did you enter up this judgment on a note which you received from defendant?" This question was objected to by the defendant's counsel unless the note was produced. The objection was overruled, and the 'defendant excepted. The witness then stated that he entered up judgment on a note passed to him by Artcher; that after he received the note it was discounted at the Commercial Bank; that Artcher paid the amount of the judgment to him. The plaintiff's counsel then read a bond given by Wright & Wells in the penalty of $3000, conditioned

to pay to Artcher $1640,87, one half in June, 1840, and the remainder in December, 1840. The witness testified that this was left with him to collect, and was paid to him in full except a mistake of about $20 in computation ; that it was received as in full. Witness understood that the bank agreed to assign the judgment to the defendant. The plaintiff's counsel then introduced a deed from Artcher and wife to Ebenezer Wright and S. T. Wells, dated in 1839, for the premises embraced in the contract between the parties, for the consideration of $1640,87 ; also a mortgage from Wright & Wells to Artcher, to secure the payment of the purchase money. The plaintiff then called as a witness S. Hazeltine, the clerk of one Zeh ; who testified that in May, 1840, the defendant came into Zeh's store and asked if McDuffie owed Zeh. Witness told him he did. Defendant said there was a balance coming to McDuffie through him, on a bond and mortgage of Wells & Wright, and that he would pay Zeh, after taking out a judgment of $1403,14. The defendant's counsel objected to this evidence, as contradicting the bond and mortgage, they being payable to Artcher. But the court admitted the evidence, and the defendant excepted. The defendant's counsel then asked the witness what reason he had for remembering that conversation. The witness answered that McDuffie said he would send in Artcher. The defendant's counsel objected to testimony of what McDuffie said ; but the court admitted it, as going to show why the witness remembered the conversation. The witness then testified that McDuffie said he would go and get Mr. Artcher to come in and agree to pay over to Zeh the balance that should be coming to McDuffie upon the bond and mortgage ; that Artcher then came in and asked witness if McDuffie was owing Zeh ; that on being informed he was, Artcher said there was a balance coming to McDuffie through him on the bond and mortgage of Wells & Wright, after taking out the judgment he held against McDuffie. The defendant's counsel then moved the court to strike out that part of the testimony of Hazeltine relating to what McDuffie told him in Artcher's absence ; which motion the court denied, and the defendant excepted. The

plaintiff then called David Zeh, who testified that he was present at a conversation on the subject of who was to have the balance of the bond and mortgage of Wells & Wright after Artcher's judgment was paid. The witness offered to prove the interest of the plaintiff in the bond and mortgage, by Artcher's confessions. This testimony was objected to, as contradicting the bond and mortgage, but was admitted by the court, and the decision excepted to. The witness then testified that Artcher told him he had a bond and mortgage against Wells & Wright, and that he held a judgment for over $1400, against McDuffie, and whenever that bond and mortgage was paid, he, Artcher, would pay over to Zeh the balance, after paying that judgment; that he would pay the difference between the bond and mortgage and the judgment; that Artcher and the witness had had lawsuits upon the matter. (*See Artcher* v. *Zeh,* 5 *Hill,* 200.) That he told McDuffie he would take Artcher as paymaster for the balance due him if Artcher would agree to it; that he afterwards saw Artcher and he did agree to it, saying he would pay the witness all over that judgment; that the plaintiff owed witness some $335. That afterwards, in September, 1843, witness gave to McDuffie a release of all claims; that no part of the contract between witness and defendant was in writing; that witness released him on the trial of the cause, to make him a witness. The defendant's counsel objected to any testimony as to the object of the release; which objection was overruled, and the defendant excepted. The plaintiff proved by S. S. Wells that he was one of the parties to the bond and mortgage; that it was given to secure the purchase money of a lot of land witness bought of the defendant. The plaintiff's counsel proposed to prove that the plaintiff negotiated the sale, and that the defendant ratified it, by giving the deed. This was objected to as immaterial and inadmissible testimony, but admitted. That witness had no conversation with Artcher on the subject, till the deed was executed; that the bond and mortgage had been delivered to the witness by Edwards & Meads; that he paid to them all they claimed to be due thereon, that he was afterwards notified that there was a mistake of a few dollars, which had

Artcher *v.* McDuffie.

never been paid in money, and he had never been called upon for it. That in the fall of 1839 he had the first conversation with the plaintiff about the land; that plaintiff told witness he had the selling of one half for Dewell; that he had the selling of the other half, but did not own it; that plaintiff first applied to him to purchase the Dewell half, but on witness' objecting to buy an undivided half, he said the other man would take the same for his half; that 1400 dollars was the amount finally agreed upon; that witness told McDuffie, if witness and Wright could purchase the other half at the same rate they did the Dewell half he would have no objection to take an interest in it; that McDuffie replied he would see the other man and then would be prepared to say; that soon after, the witness saw the plaintiff again; who then stated that the other man would take the same for his half. The plaintiff proved by Mr. Meads that Artcher paid the judgment against the plaintiff; that Artcher was an endorser on the note sued by the bank. The plaintiff rested, and the defendant's counsel moved for a nonsuit, on these grounds: (1.) That there was no proof of a promise by the defendant to pay McDuffie; the only promise being to Zeh; (2.) That if McDuffie had any claim it should be specifically declared on, and could not be recovered under the common counts; (3.) That there was no proof of McDuffie's having any interest in the bond and mortgage; but that the proof showed the contract was forfeited, and all claims under it; (4.) That the promise, if any, was void, for want of consideration, and void by the statute of frauds, because not in writing; (5.) That there was no legal evidence that the note sued on was the same as the note mentioned in the contract; (6.) That the plaintiff having been released from Zeh's debt, the money, *ex æquo et bono*, belonged to Zeh, and not to McDuffie, and that McDuffie could not maintain an action for it. The court denied the motion for a nonsuit. The testimony being closed, the court charged the jury that the first question for them to consider was whether the defendant regarded the contract for the sale of the land to the plaintiff forfeited, or not; that the plaintiff having neglected to comply with the terms of the contract, by the pay-

ment of the note at the time specified, it became optional with the defendant to forfeit or enforce the contract; that he had a right to do either, but could not do both ; that he could not retain the land and still enforce the payment of the note ; that if the jury therefore should come to the conclusion, from the evidence, that the defendant regarded the contract as subsisting, and the land was sold to Wells & Wright while the contract was so subsisting, and with an understanding that the plaintiff was to have the balance that it sold for, over and above the amount of the note, and costs, then the plaintiff was entitled to recover the balance of $100,40, with interest; that as to the alleged mistake of $20, if it occurred through the fault of the defendant, or of his agent or attorney, it ought not to prejudice the plaintiff. The defendant's counsel excepted to the charge. The jury found a verdict for the plaintiff for $259,26 ; and the defendant brought his writ of error.

*R. W. Peckham,* for the plaintiff in error.

*H. G. Wheaton,* for the defendant in error.

*By the Court,* PARKER, J. I will proceed to examine the several alleged grounds of error in the order in which they were presented on the argument. After a judgment record had been introduced, showing that on the 6th of May, 1839, a judgment was recovered in favor of the Commercial Bank of Albany against McDuffie, for $1403,19 damages and costs, Orlando Meads was called as a witness, and testified that a note against McDuffie, dated about the 8th of January, 1838, for over $1000, was passed to the witness by Artcher. The witness was then asked by the counsel for McDuffie, " Did you enter up this judgment on a note which you received from defendant?" This was objected to by Artcher's counsel, " unless the note was produced." The objection was overruled and an exception taken. This was not an objection to proving the contents of the note. They had already been sufficiently stated, without objection. I think it was clearly competent to prove the fact

Artcher *v.* McDuffie.

that the judgment was entered on a note received from the defendant, and that the exception was not well taken.

Several objections were made to the admissibility of evidence, on the ground that it contradicted the bond and mortgage given by Wells and Wright to Artcher. But I think the counsel mistook entirely the effect of the evidence. It did not in any respect contradict the language of the bond and mortgage ; nor was it offered for any such purpose. The object of its introduction was to show that McDuffie negotiated the sale to Wells and Wright, and by an agreement with Artcher was to have a certain portion of the proceeds. That Artcher in fact held a part of the proceeds of the bond and mortgage in trust for McDuffie. This was proper evidence, and a good foundation for the subsequent promise. (*Artcher* v. *Zeh*, 5 *Hill*, 203 ; *Kane* v. *Gott*, 24 *Wend.* 641.)

The third point is that Hazeltine, the clerk of Zeh, was permitted to prove the declarations of McDuffie. Hazeltine had been called as a witness and examined by the counsel of McDuffie, and proved a conversation with Artcher in which the latter promised to pay to Zeh the balance of the bond and mortgage against Wells and Wright, after deducting the judgment of $1403,14. On the cross-examination Artcher's counsel asked the witness what reason he had for remembering that conversation. The witness answered that McDuffie, after giving the note to Zeh, said he would send in Artcher, when the counsel for Artcher made the objection to the witness' stating, in answer, what McDuffie said ; but the court admitted the evidence, as being the witness' reason for remembering the conversation called out by the counsel objecting. I see no error in this. The counsel had called for the reason, and no objection was made until it had been given. I do not think he was at liberty afterwards to repudiate it, when he found the reason assigned gave weight to the evidence he sought to invalidate.

The witness, David Zeh, after relating different conversations with Artcher, on inquiry made by the counsel for McDuffie, stated in answer to a question put by the counsel for Artcher,

that he had conversations with Artcher at other times, at the request of McDuffie, in 1840 ; and the counsel for Artcher then offered to show that Artcher at that time said he did not owe McDuffie any thing. This was objected to, and I think properly excluded. It certainly was not competent for Artcher to prove his own declarations made when McDuffie was not present ; and it did not change the rule that the conversations took place at McDuffie's request.

Zeh testified that on the trial between himself and Artcher he released McDuffie for the purpose of making him a witness, and the counsel excepted to the admission of evidence as to the object of the release. If this evidence was offered for the purpose of attempting to change the legal effect of the release it should have been rejected ; but I think it was competent to show that the release was not made at the time of the contract to transfer the demand against Artcher from McDuffie to Zeh ; for if executed at that time, it might have been a good consideration for the assignment, so as to take it out of the statute of frauds. (*Artcher* v. *Zeh,* 5 *Hill,* 200.)

I do not think the sixth point well taken. The recorder was right in refusing to nonsuit. The case presented questions of fact, which it belonged to the jury to determine, and there was no question of law involved which would have authorized a nonsuit.

By far the most serious question presented in this case is, whether the recorder erred in charging that McDuffie could recover under the count for money had and received, the $20 which Artcher had failed to collect on account of an error of computation made by his attorneys. It appeared by the testimony of Mr. Wells that this money had never in fact been paid, though the bond and mortgage had been delivered up to Wells and Wright. The general rule undoubtedly *is* that the action for money had and received will only lie where money has been received by the defendant. (*Beardsley* v. *Root,* 11 *John.* 464; *Lucket* v. *Bohannon,* 3 *Bibb,* 378 ; *Maddison* v. *Wallace,* 7 *J. J. Marsh.* 100; *John* v. *Haggin,* 6 *Id.* 581.) But negotiable notes received by the defendant are often re-

garded as money. (*Floyd* v. *Day*, 3 *Mass. Rep.* 405. *Hemmenway* v. *Bradford*, 14 *Id.* 122. *Willie* v. *Green*, 2 *N. Hamp. Rep.* 333. *Clark* v. *Pinney*, 6 *Cowen*, 297. *Mason* v. *Waite*, 17 *Mass. Rep.* 560. *Ainslie* v. *Wilson*, 7 *Cowen*, 662. *Arms* v. *Ashley*, 4 *Pick.* 74.) And when an attorney or agent has discharged a debt due to his principal, and applied that debt to pay his own debt, the amount of the debt so discharged may be recovered in this form of action. (*Beardsley* v. *Root*, 11 *John.* 464.) Where an agent, having sold land and received a part of the price, and taken notes for the balance, also might, with ordinary diligence have received the whole, and being called on for the money said "he knew nothing about it," he was held liable in this action. (*Hemmenway* v. *Hemmenway*, 5 *Pick.* 389.)

In this case, Artcher had the entire control of the bond and mortgage. If the facts were found by the jury as they were claimed by McDuffie to exist, it was the duty of Artcher to collect the avails of the bond and mortgage, and pay over to him the proceeds, after deducting the judgment. If Artcher was to be regarded as the agent of McDuffie for this purpose, and discharged a part of the debt without payment, the facts would still fall short of the cases last cited ; the sum in question not having gone, in any form, to his benefit. It could not be said he had received money or what was to him an equivalent. But I think the count in the declaration on an *account stated* relieves this case from difficulty. It was proved that Artcher promised to pay the difference between the amount of the bond and mortgage and the judgment ; and I think there was evidence sufficient to support that count, so as to include the $20. (1 *Saund. Pl.* 33 ; 1 *Chit. Pl.* 343 ; *Holmes* v. *De Camp*, 1 *John.* 34 ; *Montgomery* v. *Ivers*, 17 *Id.* 38.)

On the whole, therefore, I think none of the numerous exceptions in this case are well taken, and the judgment of the Albany mayor's court must be affirmed with costs.