NEW ENGLAND WATER WORKS COMPANY, Respondent, *v.* THE FARMERS' LOAN AND TRUST COMPANY, Appellant.

*Money received by a mortgage trustee with instructions not to pay certain coupons — the trustee is not liable to the holder of such coupons for not paying them.*

A trustee, under a mortgage given to secure an issue of bonds, which receives from an officer of the corporation moneys which, so far as appears, belong to the officer individually, with instructions to pay the maturing interest coupons, except certain coupons held by a designated person, the amount of which it is directed to return, is bound to obey such instructions; if it does, it is not liable to the person designated by the instructions for the amount returned in accordance therewith.

*It seems*, that if the money had been sent by the mortgagor the trustee would not be liable.

APPEAL by the defendant, the Farmers' Loan and Trust Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 19th day of February, 1900, upon the verdict of a jury, and also

from an order bearing date the 13th day of February, 1900, and entered in said clerk's office, denying the defendant's motion for a new trial made upon the minutes.

The action was brought by the plaintiff, as assignee of C. H. Venner & Co., to recover the amount of certain interest coupons held by Venner & Co., which the defendant refused to pay.

*David McClure*, for the appellant.

*George H. Yeaman*, for the respondent.

INGRAHAM, J.:

The Iowa Water Company, a corporation organized under the laws of the State of Iowa, on or about April 15, 1897, made and delivered to the Farmers' Loan and Trust Company, as trustee, a mortgage or deed of trust to secure an issue of 400 bonds of $1,000 each, with interest. The coupons representing the interest on these bonds were payable on the first of April and October in each year at the office of the defendant in the city of New York. On April 1, 1891, it would appear that there were outstanding 349 bonds, and on March 28, 1891, the treasurer of the water company sent to the defendant a draft for $4,195.45 in a letter which stated that C. H. Venner had assumed the payment of the interest on $120,000 of the bonds and would pay as usual the interest on the same, and on the same day the assistant treasurer of the Iowa Water Company sent to the defendant another draft for $2,000, which was to be applied to the payment of the coupons due on April first. Before April first Mr. C. H. Venner called on the defendant and was informed that the amount sent to the defendant was not sufficient to pay all the coupons on the outstanding bonds due on April first, and that the defendant would not pay out any of the money which it had received until provision was made for the full amount of coupons maturing on April first. After several propositions had been made by Mr. Venner to induce the defendant to pay the coupons, to which the defendant refused to accede, Mr. Venner suggested that the trust company pay out the full amount it had received, and when this was exhausted that the trust company should purchase the remaining coupons as they were presented for the account of Venner & Co., and the amount paid by the trust company therefor Venner & Co.

would pay to the defendant.    Mr. Searls, the vice-president of the trust company, agreed to this arrangement, and subsequently the trust company paid all of the coupons presented and sent to C. H. Venner & Co. ninety-three coupons that the defendant had paid, but for which they had received no money from the mortgagor, and Venner & Co. paid to the trust company the amount thereof.    Subsequently, and on June 24, 1891, one S. L. Wiley, an officer of the mortgagor, transmitted to the trust company drafts aggregating $3,663, which the trust company were directed to apply in satisfaction of the interest coupons on the bonds secured by the mortgage before mentioned due April 1, 1891.    The letter accompanying this remittance contained the following statement : " C. H. Venner is under obligation to pay this money, as well as all future accruing interest on these bonds, together with the principal, but I make payment of the same to you under protest, solely for the purpose of preventing any breach of any of the covenants of the mortgage of the Iowa Water Co. securing these bonds.    It is my purpose to call on Venner for the return of this money to me and to force him at once to make good to me this expenditure.    * * *    I wish you would send these paid coupons to me.    Under the terms of my contract with Venner, he is under obligation to pay them, and I am advised that when I pay the same I can recover the amount with interest from Venner. I, therefore, wish the paid coupons as evidence that I have discharged them myself.    I wish, in the same connection, that hereafter you shall not deliver to Venner any coupons, nor, indeed, any bonds which may be paid off or discharged.    I, myself, am entitled to them and protest against their delivery to Venner under any circumstances."    After the receipt of this letter and remittance by the defendant, Venner seems to have received notice that money had been deposited with the trust company to pay these coupons.    He sent to the trust company the ninety-three coupons which had been delivered to him, which the trust company refused to pay.    Subsequently Venner had a conversation with Mr. Searls, the vice-president of the defendant.    The exact purport of this conversation is not clear as Mr. Searls is dead and Mr. Venner's recollection of it does not appear to be very distinct.    At the close of the interview, however, Searls said he would write to the Iowa Water Company and explain the situation.    It is also proved that Mr. Searls did write to Wiley.

in relation to the payment of the coupons held by Venner. The letter was offered in evidence by plaintiff. It stated that Venner had on or about April first made an arrangement with the trust company by which the trust company was to pay the coupons which the mortgagor had not provided money to pay, and that he (Venner) would repay to the trust company the amount paid therefor; that in pursuance of that arrangement the trust company had paid the coupons; had sent ninety of such coupons to Venner who had paid the trust company the amount called for by such ninety coupons, and asked for more explicit directions as to whether or not the defendant should pay Mr. Venner the amount represented by these ninety coupons. In answer to this the defendant received a letter from Wiley which the defendant offered but which appears to have been excluded by the court. The letter, however, was marked for identification and is part of the record. It stated that the money sent to the defendant was to be held and used by it to prevent any breach in the covenant of the mortgage of the Iowa Water Company securing the payment of the bonds, and directing the defendant that if Venner had paid and acquired title to the coupons the defendant was not to pay him therefor; that under the plain and unequivocal terms of his contract, Venner must pay these bonds, both principal and interest. "If he once pays either bonds or coupons, in whole or in part, we refuse to pay him any part of what he may pay. * * * You must not pay Venner or anyone for his use." The letter also contained a direction to send to Wiley the amount of money represented by the coupons Venner may have paid. In accordance with the instruction in this letter the trust company refused to pay Venner the amount of the ninety-three coupons held by him, but returned the amount thereof to Wiley. There was no evidence that the money transmitted by Wiley was the money of the mortgagor or that the defendant had any right to make any use of that money, except as directed by Wiley from whom it had been received.

Assuming that the defendant as trustee, having received from the mortgagor a certain amount of money with which to pay the coupons, was bound to apply the money that it had received to that purpose, and that a liability was imposed upon the defendant to the holders of coupons which they could enforce, and that the coupons

held by Venner stood in the position of unpaid coupons which Venner was entitled to enforce against the mortgagor, he certainly would have had no cause of action against the defendant unless the defendant had received money which it was authorized to pay for the coupons held by him. Certainly the defendant, receiving this money as it did with specific directions as to the application to be made of it, was neither required nor *in fact* authorized to use this money except in compliance with these directions. If it had paid this money in violation of Wiley's instructions it would have been responsible to Wiley for an unauthorized use thereof. The plaintiff's counsel, on the argument before us, and in his brief submitted, seems to claim that the trust company, having in its possession money sent to it by Wiley under the circumstances detailed, converted that money to its own use on its refusal to pay the coupons and thus became liable to the plaintiff as for a conversion ; but the difficulty is that there was no specific money that ever became the money of the plaintiff or his assignees. Whether or not Wiley was liable to either the defendant or to the holders of the coupons to pay them is not material upon this question. If Wiley transmitted his money to the defendant, he had a right to specify the use to which that money should be put, and the defendant on the receipt of such money would be responsible to Wiley for any unauthorized use thereof. When this money was received by the defendant those coupons had been long overdue, and adopting the theory of the plaintiff that they had been purchased by the trust company on account of Venner when, on June 24, 1891, Wiley sent a sum of money to the defendant, he certainly had the right to apply this money as he pleased, or before its application by the defendant to countermand a direction that he had given as to its application ; and the defendant would not be liable for refusing to pay any coupons that Wiley had directed it not to pay. As before stated, this money was Wiley's, and not the mortgagor's or the defendant's. It certainly never was the money of the plaintiff or the plaintiff's assignors ; and upon no principle can the defendant be held as for a conversion of the plaintiff's money. Nor do we know of any other principle upon which the defendant is liable to the holder of the coupons remaining unpaid upon these bonds.

When this complaint was before this court upon a formal appeal upon a question of pleading, it was held that the one cause of action alleged in the complaint was an action for money had and received for the plaintiff's use (23 App. Div. 572). The action for money had and received is one " depending upon general principles of equity for the maintenance of the plaintiff's claim to the money. \* \* \* It is the most favorable way in which a defendant can be sued ; he can be liable no further than the money he has received, and against that he may go into every equitable defense upon the general issue ; he may claim every equitable allowance, etc. ; in short, he may defend himself by everything which shows that the plaintiff *ex æquo et bono* is not entitled to the whole of his demand or any part of it." (*Chapman* v. *Forbes*, 123 N. Y. 536.) In this case the defendant, a trustee, was not bound to assume any risk as to the application of money received for the payment of these coupons where the person remitting the money has placed any limitations as to the particular coupons that it should pay ; and thus, if the mortgagor had transmitted to the company certain moneys to pay the coupons, with directions that certain coupons should not be paid, or limiting the power of the defendant as to the application of the money so remitted, it would seem to be clear that the defendant would not be liable in an action for money had and received for the payment of the particular coupons which the mortgagor had directed should not be paid. The defendant assumed no obligation to the holder of the coupons, except so far as by acceptance of the trust it would be liable to pay the coupons that the mortgagor had provided funds to pay. The sole effect of the transaction by which Venner acquired the title to these coupons was to make Venner the holder thereof, having a cause of action against the mortgagor for the amount due thereon, and possibly a right to enforce the mortgage for their collection. If the mortgagor had transmitted to the defendant a sum of money to pay the coupons which had not been paid, and had given instructions that the coupons held by Venner were not to be paid, the trust company would certainly be under no obligation to disobey those instructions and pay Venner. The right of a debtor to instruct its agent as to the manner of payment of its indebtedness, or the manner in which money forwarded to an agent for the purpose of paying his indebtedness should be applied,

cannot be disputed. Thus, the rule is stated in the American and English Encyclopædia of Law (Vol. 2 [2d ed.], 435): " Where a payment is made by the debtor, he has the right to prescribe the manner in which it shall be applied towards the discharge of his indebtedness. He may apply it most beneficially to himself by preferring principal to interest, secured to unsecured debts, or legal to equitable debts. He may also direct application to illegal demands, in which case the amount paid cannot be recovered." The defendant, placed in the situation in which it was, was not bound to assume any of the risks incident to a failure to follow the direction that accompanied the transmission of the money to it. It certainly did not become liable to the holder of the coupons until it had money in its hands to be specifically applied to their payment, and there is no evidence in this case to show that it had ever had any money in its hands to be specifically applied to the coupons held by Venner. It certainly had no such money at the time of the commencement of the action.

Upon the whole case we think that the defendant was entitled to the direction of a verdict, and the judgment must, therefore, be reversed and a new trial ordered, with costs to the appellant to abide the event.

Van Brunt, P. J., Patterson, O'Brien and Hatch, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.