LOUIS BROOKS and Others, Copartners, etc., under the Firm Name and Style of DOREMUS & COMPANY, Respondents, *v.* PEOPLE'S BANK, Appellant.

First Department, July 2, 1920.

Contracts — validity of transactions in cotton futures — banks and banking — authority of cashier to secure customers for cotton broker — notifying broker of deposits made by customers to credit of broker — money had and received — recovery not permissible on any theory other than receipt of money.

The purchase and sale of cotton contracts or futures, where it is the intention of *both* parties that there is to be no delivery of the cotton and that settlement is only to be made on the difference between the purchase and selling prices, is a gambling transaction and no recovery can be had in an action based thereon.

In an action for money had and received it appeared that the plaintiffs were cotton brokers and that the cashier of the defendant undertook to secure customers for the plaintiffs and to notify them with respect to moneys deposited with the bank to the credit of the plaintiffs, that the cashier notified the plaintiffs of deposits not actually made, but there was some evidence to show that the plaintiffs requested the cashier to make such notifications, whether deposits were made or not.

*Held,* that the cashier in securing customers for the plaintiffs, and in dealing with the plaintiffs for his own account, was not acting within the scope of his authority to represent the defendant; but that it was within the scope of his authority to notify the plaintiffs with respect to moneys deposited with the defendant to their credit unless such notifications were given at the request of the plaintiffs, and without regard to whether or not the moneys had actually been deposited.

In an action for money had and received recovery can be had only on proof of the fact that money was actually received by the defendant or its agent for the use and benefit of the plaintiffs, and in such form of action there can be no substitute, either on the theory of fraud, estoppel or otherwise, for proof of the fact that money was actually received.

Since the uncontroverted evidence shows that all the money actually received by the defendant for the use and benefit of the plaintiffs had been repaid, recovery cannot be had in this form of action on the theory that they had sustained damages through the false representations of the defendant's cashier with respect to moneys having been deposited to their credit.

APPEAL by the defendant, People's Bank, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 10th

day of July, 1919, upon the verdict of a jury, and also from an order entered in said clerk's office on the 24th day of July, 1919, denying defendant's motion for a new trial made upon the minutes.

*Charles L. Kingsley,* for the appellant.

*J. H. Gilbert,* for the respondents.

Laughlin, J.:

This is an action for money had and received. The plaintiffs were copartners, having their principal office at Atlanta, Ga., and doing business under the name of Doremus & Co. Their business was handling cotton contracts and cotton seed oil, as brokers on a commission basis on the floors of the New York Cotton and the New York Produce Exchange, where they were represented by the plaintiff Brooks, who resided here. The defendant is a Georgia banking corporation having its office at Mansfield, Ga. It is alleged in the complaint that there was deposited with the defendant, to the credit and for the use of the plaintiffs, between October 15 and November 8, 1915, the sum of $9,750, and that $4,200 thereof was paid to them between October 26 and November 15, 1915, leaving a balance of $5,550 due and owing, payment of which had been duly demanded and refused. The answer admitted that the defendant was such a banking corporation, and denied all other material allegations of the complaint, and for a separate defense it is alleged that if between the dates mentioned in the complaint there was in the possession or control of the defendant money to which the plaintiffs had title, or in which they had a beneficial interest, such money was in its possession without knowledge of plaintiffs' title or beneficial interest and by virtue of contracts between the plaintiffs and third parties which were made and to be performed in Georgia, and were governed by its laws and were wagering contracts in contravention of the laws of Georgia known as sections 4117, 4257, 4258 and 4259 of the Code of Georgia, which statutes are set forth in the answer, and that the moneys were unknowingly in the possession of the defendant pursuant to wagering contracts between the plaintiffs and third parties to be performed in the State of Georgia, which

contracts contravened the public policy of Georgia and were in violation of its laws, and that the possession by the defendant of any such money was only that of a stakeholder, and that the alleged cause of action accrued without the jurisdiction of this State and within the State of Georgia, and that the defendant, at no time, was a resident of this State or had a place of business here.

The plaintiffs Stanford and Doremus were residents of Georgia, and Stanford was a member of the New Orleans Cotton Exchange. They had an office in Atlanta, Ga., which was in charge of Stanford for handling cotton contracts and dealing in cotton seed and cotton seed oil. When the office in Georgia received an order to buy it would wire the office in New York, of which Brooks was in charge, by plaintiffs' own direct wire, to execute the order. The defendant was a small country bank and one Franklin was its president, and his nephew Hugh Franklin was its cashier and transacted most of its business. It was shown generally that some months before the transactions in question the plaintiffs had had dealings with the defendant consisting of two or three deposits to their credit, and it notified the Georgia office of the plaintiffs by telegraph or telephone of such deposits and paid the same by remitting to the plaintiffs Atlanta exchange therefor, or by sending the plaintiffs drafts. The plaintiff Stanford testified that early in October, 1915, said cashier called at plaintiffs' Georgia office and the plaintiff Stanford informed him that he had become a member of the firm of Brooks & Doremus, for whom he had theretofore been working on a salary, and that he was anxious to secure business from good people and that it would be a benefit to the firm and to Stanford if the people in the vicinity of the defendant's bank knew that the firm carried a balance with the defendant, and said that the plaintiffs would be glad to leave on deposit any margins deposited to their credit in the bank, and that when any of their customers closed out for profit any open account they might have with the plaintiffs he would wire the bank to pay without requiring the customers to wait for checks, and that the plaintiffs had sufficient capital to conduct their business and that it would not be necessary for them immediately to draw out such funds so deposited with the

First Department, July, 1920.                    [Vol. 192.

defendant by customers, and he requested the cashier to speak a good word for the plaintiffs through his bank and to notify the plaintiffs when margins were deposited, and that shortly thereafter he wrote to the cashier to that effect. The letter was dated October 11, 1915, and in it he expressed himself as being sure that there would be a bull market in cotton and an opportunity for traders to make profits and stated that he wanted " good people, not welchers." Thereafter and on October 15, 1915, the plaintiffs received a telegram at Atlanta from the *defendant's cashier* stating that the plaintiffs had four items of credit, consisting of two deposits made by H. M. Lloyd of the aggregate of $500, one by W. P. Hardman of $200, and one by J. W. Morgan of $300, and that the cashier would call at the plaintiffs' Atlanta office the following Monday; and on the same day they received a telegram from the *defendant* that H. M. Lloyd had deposited $200 to their credit, and on the next day received a telegram from the cashier to buy 100 bales of January cotton for the account of J. M. Morgan, stating that the funds had been deposited. On the twenty-first day of October they received a telegram from *defendant* stating that H. M. Lloyd had deposited $500 to their credit and that W. P. Hardman had deposited $300 to their credit; and the next day they received telegrams from *defendant* saying that R. L. Boyd, J. W. Henderson and W. P. Hardman had each deposited $300 to their credit and requesting them to buy 100 bales of January cotton for each. On October twenty-third they received a telegram from the *defendant* that D. L. Jones had deposited $300 and for them to buy 100 bales of cotton for March delivery; and on the twenty-sixth of October they received a telegram stating that the defendant had credited their account with $850 " favor H. M. Lloyd." On October twenty-seventh they received a telegram from *defendant* that H. M. Lloyd had deposited $900, D. L. Jones $100, W. P. Hardman $200, and R. L. Boyd and J. W. Morgan each $100; and on October twenty-eighth they received telegrams from the *defendant* that D. L. Jones and J. W. Morgan had each deposited $100, and W. P. Hardman $200, and W. E. Lunsford $100, and H. M. Lloyd $800, and W. P. Hardman $200, and W. R. Greer $300, and to buy 100 bales

of January cotton for the account of Greer. On the first of November they received a telegram in the name of the defendant signed by the initials of the cashier, stating that Jones, Greer, Boyd, Morgan and Lunsford had each deposited $100 to the credit of the plaintiffs, and on the same day a telegram in the name of defendant stating that J. G. Morgan had deposited $300 and asking them to buy 100 bales of cotton for March delivery for his account. On November sixth they received a telegram from the *defendant* that Jones had deposited $100 to their credit, and on November eighth that W. C. Hitchcock had deposited $200 to their credit and J. W. Henderson $300, W. P. Hardman $300, H. M. Lloyd $500, and J. G. Morgan $200. Stanford testified with respect to the H. M. Lloyd account that it was opened October fifteenth by the cashier telephoning him at Atlanta to buy a cotton contract for the account of Lloyd who he said had deposited $300 to the credit of the plaintiffs. On the 26th day of October, 1915, the plaintiffs drew a draft on the defendant for the sum of $3,000, which was honored, the money, however, having been charged to the individual account of the cashier, and about the fifteenth day of November they received $1,200 from the defendant similarly paid by the cashier on a draft drawn on defendant. The cashier testified that he had known Stanford several years and was in the plaintiffs' office in Atlanta on the 12th day of October, 1915, accompanied by J. W. Henderson; that Stanford stated that cotton was going up and that he was very " bullish " on it; that Stanford had asked him to get parties at Mansfield to deal with the plaintiffs in cotton futures and oil futures and he agreed so to do, and that he informed Stanford that he could not deal in cotton futures owing to the fact that he was such cashier, and that Stanford said that he could use another name; that he thereafter obtained the consent of H. M. Lloyd, who resided at Mansfield, to use his name and that the H. M. Lloyd in the communications meant him, the cashier; that Stanford further stated that the plaintiffs constituted a big, strong firm and did not need any margins on cotton, and that the witness and his friends could deal with the plaintiffs without putting up any margins, and he could send telegrams to the Atlanta office

and that the plaintiffs would execute any order that he or his friends sent to them, and told the witness to send telegrams stating that he had the money on deposit at the bank, whether he remitted the money or not, and that the witness " *could collect it later,*" and that the telegrams were sent without any money having been deposited excepting the item of $200 which was deposited by W. C. Hitchcock on November eighth. On the 14th of April, 1914, $300 had been deposited with the defendant to the credit of the plaintiffs, and $200 the next day, but that was remitted to them to balance the account on the 21st of April, 1914. The cashier also testified that he showed the letter which he received from Stanford under date of November 11, 1915, to several of his acquaintances.

It thus appears that at the time the action was commenced there was no money on deposit with the defendant to the credit of the plaintiffs, and that the defendant neither had, nor had it received, any money to the credit of the plaintiffs which it had not paid over to them. It will be seen that the total amount of the credits specified in the telegrams was $9,750, but only $3,650 was clearly specified as having been deposited to the credit of the plaintiffs, and the sum of $1,800 was, in substance, stated as having been deposited to buy cotton contracts for future deliveries, and the sum of $4,300 was stated to have been deposited by third parties without any buying or selling order. It will also be observed that long prior to the commencement of the action the plaintiffs were paid on drafts drawn on the defendant, but on the credit of the defendant's cashier, whose account was charged therewith the sum of $4,200, which is $550 more than was expressly represented as having been deposited to the credit of the plaintiffs, whereas, the only amount which had actually been deposited to the credit of the plaintiffs was the sum of $200 by W. C. Hitchcock, which amount was included in the payment made on one of the plaintiffs' drafts on the 15th of November, 1915.

Under a ruling made by the trial court, the plaintiffs attempted to show that they executed the orders for the purchase of cotton contracts for future deliveries, for which purpose the said $1,800 was stated to have been deposited by the individuals named; and they presented some evidence

tending to show they had called upon some of the parties, who the telegrams stated had made deposits, for additional margins before they received the telegrams notifying them with respect to the deposits. As I view the case, it is not necessary to decide whether the orders were duly executed or margins were duly called for. We are not concerned with the state of the several accounts between plaintiffs and their customers, but only with the question as to whether the defendant in fact received any money to the use and benefit of the plaintiffs for which it has not accounted. There is no evidence that any entry was made in the books of the defendant with respect to any of the deposits which were stated to have been made but in fact were not made. The defendant endeavored to show that its books contained no entry with respect thereto, and it was excluded on plaintiffs' objection. The plaintiff Stanford testified that a prosecution was instituted in Georgia, charging his firm with the violation of the Georgia statutes in that they conducted a future business for aiding and abetting in future transactions, and that he pleaded guilty; and that a test case was made and decided adversely to the plaintiffs, who discontinued business. The plaintiff Brooks testified that he was a member of the bar of Georgia, and that, knowing that the action could not be maintained in that State, he advised that it be brought here on the theory that it was intended that the transactions should be executed on the exchanges here and that our courts would follow the law of this State in deciding with respect to the validity of the transactions. Counsel for the appellant contends that the evidence shows that the individuals, whom the plaintiffs, through the defendant's cashier, including the cashier himself, induced to speculate in such cotton contracts, and the plaintiffs contemplated that there was to be no delivery of the cotton and that the transactions were gambling transactions pure and simple, and that the settlements were only to be made on differences between the purchase and selling prices. If that were the intention of *both* parties, the transactions would be invalid and the plaintiffs could not recover even under our law. (*Story* v. *Salomon,* 71 N. Y. 420; *Weld* v. *Postal Telegraph-Cable Co.,* 199 id. 88; *Springs* v. *James,* 137 App. Div. 110; *Zeller* v. *Leiter,* 114 id. 148; *Cohen* v. *Rothschild,*

162 id. 611; Penal Law, §§ 991, 992.) It, however, cannot be held as a matter of law that such was the intention of both the parties to the transactions. The question of fact on that point was not expressly submitted to the jury.

It is quite clear that the cashier in obtaining these customers for the plaintiffs and in dealing with the plaintiffs for his own account, which was the principal account, was not acting within the scope of his authority to represent the defendant; but it was within the scope of his authority as cashier to notify the plaintiffs with respect to moneys deposited with the defendant to their credit unless such notification were given, as his testimony tended to show, at the request of the plaintiffs, and without regard to whether or not the moneys had actually been so deposited. His testimony on that point was controverted and thereby an issue of fact was raised which was the principal issue submitted to the jury.

The plaintiffs, before bringing this action, were aware of the fact that the defendant claimed that these moneys had not been deposited, and, with that knowledge, instead of electing to look to their customers, or to attempt to hold the defendant liable for any damages they may have sustained through the false representations of the cashier with respect to moneys having been deposited to their credit, they deliberately elected to proceed against the defendant as for money had and received for their use and benefit, and although evidence not material to the issue was received, their pleading was not changed nor was the theory of their cause of action changed. They have recovered on the theory of money had and received, and their counsel attempts to sustain the recovery only on that theory. Recoveries have been had against banks in favor of *bona fide* holders for value of checks and certificates of deposit wrongfully and fraudulently issued by their officers; and in such cases the recovery is on the obligation issued in the name of the bank, and the bank is deemed estopped from showing that it did not in fact receive the moneys warranting the issuance of such checks or certificates of deposit. (*Farmers' & Mechanics' Bank* v. *Butchers & Drovers' Bank,* 16 N. Y. 125; *Barnes* v. *Ontario Bank,* 19 id. 152.) Here, however, the bank did not issue any obligation, negotiable or otherwise, and the action is not predicated on an obligation of the bank issued by

its cashier. The plaintiffs have elected to bring an action in the form which permits a recovery only on proof of the fact that money was actually received by the defendant or its agent for their use and benefit, and in such form of action it is the well-settled law that there can be no *substitute,* either on the theory of fraud, estoppel or otherwise, for proof of the fact that the money was actually received by the defendant or its agent to the use and benefit of the plaintiffs. (Chitty on Pleading, *362; 11 Chitty Cont. [11th ed.] 899; *Moses v. Macferlan,* 2 Burr. 1005; *Hume v. Bolland,* 1 Exch. [C. & M.] 130; *New York Guaranty & Indemnity Co. v. Gleason,* 78 N. Y. 503, 508; *National Trust Co. v. Gleason,* 77 id. 400; *Phœnix Bridge Co. v. N. J. Steel & Iron Co.,* 30 App. Div. 614; *Husson v. Sire,* 78 Hun, 613; *New England Water Co. v. Farmers' Loan & Trust Co.,* 54 App. Div. 309, 314; *Chapman v. Forbes,* 123 N. Y. 536; *Artcher v. McDuffie,* 5 Barb. 147; *Billington v. Richters,* 28 Misc. Rep. 769; *American Preservers Co. v. Wiltsie,* 10 id. 463.)

At the close of the plaintiffs' case counsel for the defendant moved for a dismissal on the grounds, among others, that the evidence showed that the plaintiffs had been repaid all of the money that was received by the defendant to their credit and more, and at the close of the evidence the motion was renewed on that and other grounds. The motions were denied and exceptions to the rulings were duly taken.

I am of the opinion that since the uncontroverted evidence showed that the defendant received no money to the use and benefit of the plaintiffs which it had not repaid prior to the commencement of the action, the action cannot be maintained and that the court should have dismissed the complaint.

It follows that the judgment and order should be reversed, with costs to appellant, and the complaint dismissed, with costs.

CLARKE, P. J., SMITH, MERRELL and GREENBAUM, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.