THE NEW YORK GUARANTY AND INDEMNITY COMPANY OF THE CITY OF NEW YORK, Respondent, *v.* VALENTINE GLEASON et al., Appellants.

In an action to recover, as for moneys had and received, moneys obtained from plaintiff by one R. upon pledge of forged bonds, *held,* that evidence connecting one of the defendants with the forgery was not sufficient to make her liable in the absence of evidence of any agreement or understanding between her and the forger, that she was to share in the proceeds of the forged paper, or was personally to have a benefit therefrom, or that R. was employed or acted as her agent, or that she actually received any part of the sum obtained.

*It seems,* that if it had been shown that moneys and securities found in said defendant's possession were part of the moneys so obtained, or were purchased therewith, this would not make her liable for the whole of the money obtained; that to authorize a recovery for the full amount it

was necessary to show that she was one of the principals for whom R. acted in obtaining the money; it was not sufficient, even to show that there was an understanding among the forgers that she was in some way to receive a portion of the proceeds of the forged bonds, or some benefit from the forgery.

The relation of principal and agent between the defendants in such an action, and the party obtaining the money may be established by the testimony of accomplices in the forgery; and it *seems* this is so, although the testimony is uncorroborated,

While the evidence of an accomplice should be carefully scrutinized, it is for the jury to determine what weight should be given to it.

Whether more weight should be given to the testimony of two accomplices, and whether and to what extent they corroborate each other are matters for the jury.

It appeared by the testimony of an accomplice that it was agreed between R. and two of the defendants, who manufactured and mainly controlled the forged bonds, that he was to take some of the bonds and dispose of them, and to have one-third of the proceeds, and each of said defendants to have one-third. *Held,* that the jury were authorized to find from the evidence that R. acted as the agent for said defendants or for himself and them, in which case they were liable for the full amount; also that the fact that R. absconded with the proceeds was immaterial.

For the purpose of establishing the agency in such a case, it is proper for plaintiff to prove the relations which existed between the defendants and the person obtaining the money, that they had entered into a conspiracy to forge the bonds and put them upon the market, and that they were jointly concerned in the forgery.

Having established a conspiracy, proof of the acts, admissions and declarations of any one of the conspirators in pursuance and furtherance of the criminal enterprise, and in reference thereto, is competent. But the statement of one of them as to a past transaction accompanying no act done in furtherance of, or in connection with such enterprise, is not competent against the others.

Accordingly *held,* error; where the wife of one of the alleged conspirators was allowed to testify to statements made to her by him as to acts done by the parties implicated.

Also *held,* that evidence to the effect that one of the defendants had previous to the transactions in question been engaged in other crimes, and had harbored and associated with other criminals was *improperly received.*

Statements of a defendant, pertinent to the issues, are competent evidence against him of the facts stated; but such statements are not competent to discredit the statements of a witness for the defendants.

It is competent upon the cross-examination of a witness to show that, upon a material matter, he testified differently before a grand jury from the evidence given by him.

(Argued October 9, 1879; decided November 11, 1879.)

Appeal from judgment of the General Term of the Superior Court, of the city of New York, affirming a judgment in favor of plaintiff, entered upon a verdict.

The nature of the action and the facts are set forth sufficiently in the opinion.

*Ira Shafer*, for appellants.    Under the allegations of the complaint, plaintiff could not give evidence of what was claimed to be a conspiracy.    (*Beard* v. *Yates*, 2 Hun, 466; *Walter* v. *Bennett*, 16 N. Y., 250; *Arnold* v. *Angell*, 62 id., 508; *Hollister* v. *Englehart*, 11 Hun, 446; *Lienan* v. *Lincoln*, 2 Duer, 670, 672; 5 Cranch, 351; *Fisher* v. *Fredenhall*, 21 Barb., 82; *Bailey* v. *Ryder*, 6 Seld., 363; *Robinson* v. *Stewart*, id., 189; *Chautauqua Co. Bk.* v. *White*, 2 id., 236, 257; *Brockway* v. *Burnap*, 12 Barb., 347, 348; *Thomas* v. *Austin*, 4 Barb., 265; *Barber* v. *Morgan*, 51 id., 116; *Tappan* v. *Powers*, 2 Hall, 277, 296; *Jones* v. *Baker*, 7 Cow., 445, 449; 1 Saunders' R., 230, note 4; *Forsyth* v. *Edminston*, 11 How., 408; *Massena* v. *Clark*, 17 Abb. Pr., 188; *McHenry* v. *Hazard*, 45 Barb., 657; *Tappan* v. *Powers*, 2 Hall, 322–325; *Setzar* v. *Wilson*, 4 Ired. [Law], 501, 507; *People* v. *Brady*, 56 N. Y., 182, 188–192; *Root* v. *Lowndes*, 6 Hill, 518; *Campbell* v. *Butts*, 3 Comst., 173–176.)    It was error to allow the deposition of Pettis to be read against those who were not parties to the suit when it was taken.    (1 Greenl. Ev., § 554.)    It was also error to receive the evidence of Mrs. Pettis, giving an account of her interview with her husband when she took him to task for what she saw at Gleason's house.    (3 Greenl. Ev., § 94; *Luby* v. *H. R. R. R. Co.*, 17 N. Y., 131; *Card* v. *N. Y. and H. R. R. Co.*, 50 Barb., 39; *Whittaker* v. *Eighth Ave. R. R. Co.*, 5 Robt., 650; 1 Phil. Ev. [Edw'd's ed. of 1859], 202; *Anderson* v. *R., W. and O. R. R. Co.*, 54 N. Y., 334; *Worrall* v. *Parmelee*, 1 id., 519; 17 id., 131; 54 id., 339.)    For the purpose of impeachment, the record of conviction must be produced, and the conviction cannot be shown on the cross-examination of the witness.    (1 Greenl. Ev., § 457; *Newcomb* v. *Gris-*

*wold*, 24 N. Y., 298; *Tifft* v. *Moor*, 59 Barb., 619; *Peck* v. *Yorks*, 47 id., 131; *Rathbun* v. *Ross*, 46 id., 127.) The wife of an accomplice cannot be used to corroborate her husband, because of his influence over her. (*Rex* v. *Neale*, 7 C. & P., 168; 1 Phil. Ev., 114 [Edward's ed.]) One criminal cannot corroborate another criminal, when both give testimony respecting the same crime, whether one or both of them is in State's prison. (1 Greenl. Ev., § 381; *Rex* v. *Noakes*, 5 C. & P., 326; *Regina* v. *Baunen.* 2 Mood. Cr. Cas., 309; *Roth* v. *Wells*, 29 N. Y., 471.)

*Thomas H. Hubbard*, for respondent. If the court erred in its rulings as to evidence, so long as it did not exclude anything offered to contradict Pettis, such errors could not have altered the result as to the liability of Roberts and Gleason for the money obtained through Rolston. (*Worrall* v. *Parmelee*, 1 N. Y., 519, 521; 3 Greenl. on Ev. [Redf. ed.], §§ 89–97.) Every act and declaration of each one of the parties conspiring is admissible. (1 Greenl. on Ev. [Redf. ed.], § 3; 3 id., § 89–97; *Nat. T. Co.* v. *Roberts*, 10 J. & S., 100; *Miller* v. *Barker*, 66 N. Y., 558; *Kelly* v. *People*, 55 id., 565.) The testimony of Pettis, taken under commission in Massachusetts, was properly admitted. (3 R. S. [Banks' 5th ed.], 988, § 33; id., 985, §§ 9, 10; Genl. Stats. of Mass. of 1860, chap. 131, § 13; *Comm.* v. *Green*, 17 Mass., 514; *Comm.* v. *Hall*, 4 Allen, 307; *Cole* v. *Cole*, 50 How. Pr., 60; 1 Greenl. on Evi. [Redf. ed.], 423, § 376; Code, § 832; Code of Remedial Justice, chap. I–XIII, p. 275; *Sims* v. *Sims*, 12 Hun, 233; *Nat. T. Co.* v. *Roberts et al.*, 42 Supr. Ct. R., 100; Code, § 910 [Bliss' ed.], 651, note *a*, § 911; *Union Bank of Sandusky* v. *Torry*, 5 Duer, 269; *Zellinger* v. *Coffe*, 5 id., 87; *Sheldon* v. *Wood*, 2 Bos., 267; affirmed 24 N. Y., 607; *Hitchcock's Case*, 6 City Hall Record, 43; 2 R. S., 735, § 17 [Edm. ed.], p. 760; *Scott* v. *Williams*, 23 How., 393; *Miller* v. *Barber*, 66 N. Y., 568; *Crary* v. *Houghtaling.* 1 Hill, 311; *Hall* v. *Naylor*, 18 N. Y., 588; *People* v. *Hopson*, 1 Den., 577.) Evidence received under

objection, which for any reason should not be considered by the jury, is not necessarily to be stricken out, but may be retained in the discretion of the court, and the remedy is for the party to ask for instructions to the jury to disregard it. (*Marks* v. *King*, 64 N. Y., 628; *Miller* v. *Barber*, 66 id., 558; 1 Greenl. on Ev., § 111; *People* v. *Parish*, 4 Den., 153; 1 Chitty Pl., 31; 3 Hill, 148; 29 N. Y., 591; 44 Barb., 347.)   It is no ground of defense that the defendant is an infant, a married woman, an idiot, or a lunatic.   (1. Cowen's Treatise [5th ed.], 408–409; *Conklin* v. *Thompson*, 29 Barb., 218; *Fish* v. *Ferris, jr.*, 5 Duer, 49; *Bullock* v. *Babcock*, 3 Wend., 391; *Warmouth* v. *Cramer*, 3 id., 396; *Wallace* v. *Morss*, 5 Hill, 391; *Campbell* v. *Stokes*, 2 Wend., 137; *Campbell* v. *Perkins*, 4 Seld., 440; *People* v. *Wait*, 30 N. Y., 78; *Low* v. *Mumford*, 14 J. R., 426; *Creed* v. *Hartman*, 29 N. Y., 591; *Kasson* v. *People*, 44 Barb., 347; *McCoon* v. *Smith*, 3 Hill, 148; *Mayor of N. Y.* v. *Bailey*, 2 Den., 433; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 N. Y., 30; 1 Chitty Pl., 86; *Hartfield* v. *Roper*, 21 N. Y., 615; 2 R. S., 445–451; 3 id. [Banks' 5th ed.], 745; *Matthew* v. *Fustie*, 2 E. D. Smith, 90; *Yeates* v. *Reed*, 4 Blatch., 462; *Austin* v. *Wilson*, 4 Cush., 273; *Estell* v. *Frost*, 2 Dana, 237; *Roadcap* v. *Sipe*, 6 Gratt., 213; Voorhee's Code [ed. 1870], 100; *Malone* v. *Stilwell*, 15 Abb. Pr., 421; *Flanagan* v. *Tinin*, 53 Barb., 5–587; 1 Bishop on Law Mar. Women, 905; 2 id., 784–905; *Peake* v. *Lemon and wife*, 1 Lans., 295; *Koning* v. *Manly*, 49 N. Y., 192; *Vauneman* v. *Powers*, 56 id., 43; *Rowe* v. *Smith*, 55 Barb., 417.) A jury has the right to find a verdict upon the unsupported evidence of an accomplice.   (*Yugnanzo* v. *Salmon*, 3 Daly, 153; *Dunn* v. *People*, 29 N. Y., 523.)   Where the jury have been properly instructed, the judge may refuse to entertain any further application to charge them.   (*Moody* v. *Osgood*, 54 N. Y., 488.)

EARL, J.   This is an action to recover of Gleason and wife, Roberts and wife and Corp the sum of $75,000 had

and received by them to and for the use of the plaintiff. It is alleged in the complaint that the money was obtained of the plaintiff upon the security of forged bonds of The Buffalo, New York and Erie Railroad Company, and that $30,000 was thus obtained June 5, $30,000 July 7, and $15,000 August 9, 1873.

Upon the trial evidence was given which, it is claimed, tended to show that the defendants, with others, were engaged in a conspiracy to forge the bonds and put them upon the market, for the purpose of defrauding any person who should advance any money on the faith of them. There was a verdict and judgment against all the defendants for the three sums, with interest, and all of them have appealed.

We have recently had before us the case of The National Trust Company of the City of New York against these same defendants,* in which the pleadings were the same, and the evidence substantially the same, as in this case. In that case, we held that the action was purely *ex contractu*, assumpsit for money had and received ; that to maintain the action, it was necessary for the plaintiff to establish that the defendants had received its money, or money to which it was entitled ; and that it was not sufficient to show that they had by fraud or wrong caused the plaintiff to pay money to others, or to sustain loss or damage. But we also held that it was not necessary for the plaintiff to establish that each defendant personally received a share of the money obtained by means of the forged bonds ; and that if the money was received by a common agent, those for whose benefit it was thus received were jointly liable for the whole sum, although the agent failed to pay over and absconded with the whole of the money. We further held that it was competent for the plaintiff to prove complicity on the part of all the defendants in the forgery, not for the purpose of establishing any liability on account of that, or for the wrong done or damage caused the plaintiff thereby, but for the purpose of showing the interest of the defendants in the money

*77 N Y., 400.

obtained by means of the forged bonds. We reversed the judgment in that case because these principles were not observed in the trial of that action; and our decision was based upon exceptions to the charge and to refusals to charge as requested.

Upon the trial of this action, the plaintiff attempted to show that all the defendants were implicated in forging the bonds, and that for the benefit of all of them Charles Rolston obtained of the plaintiff the two items of $30,000, and Charles J. Williamson the item of $15,000. Rolston and Williamson fled soon after the money was obtained and are not parties to this action.

In the argument before us it was admitted that there was not sufficient evidence that Williamson acted as agent for any of these defendants in obtaining the $15,000, or that any of the defendants received any portion of it; and hence that, in any event, the judgment must be reduced by that sum, with the interest thereon from August 9, 1873. It was also admitted that there was not sufficient evidence to support any recovery against the defendants Corp and Mrs. Gleason, and that the judgment as to them must be reversed and new trial granted. But it is claimed that the plaintiff has a valid recovery for the $60,000 and interest against the other three defendants.

I have looked through the vast volume of evidence taken upon the trial of this action, as carefully as I can, and I cannot find sufficient to sustain any recovery against Mrs. Roberts. There was evidence connecting her with the forgery; but there was no evidence of any agreement or understanding between the forgers that she was to share in the proceeds of the forged bonds, or that she was personally to have any benefit therefrom. There was no evidence that Rolston was employed or acted as her agent in procuring the $60,000 of the plaintiff, and there was none that she actually received any part of that sum. The fact that some money and valid bonds some months afterwards were found in her box in the office of The Safe Deposit Company, is not

sufficient to show that she received any of the plaintiff's money. That money and those bonds are in no way shown to have in any way come from the plaintiff or plaintiff's money ; and even if it had been thus shown, the fact would not have justified the verdict which was recovered against her for the whole of the money obtained by Rolston. Even if it had been shown that with the money obtained by Rolston other persons purchased bonds and then delivered the bonds to her for safe keeping or as her own, she could not, in this action for money had and received, be made liable, in the absence of proof that Rolston, in some way, acted for her in obtaining the money. To authorize this recovery against her for all the money obtained by Ralston, it was not sufficient even to show that there was an understanding among the forgers that she was in some way to receive some benefit from the forgery, or that she was to receive a portion of the proceeds of the forged bonds ; but it was necessary to show that she was one of the principals for whom Rolston acted in obtaining the $60,000. On the contrary, the proof given on the part of the plaintiff shows precisely the persons for whom Rolston acted in obtaining this money, and she was not one of such persons. The judgment as to her must, therefore, also be reversed.

As to the other two defendants, Gleason and Roberts, I think there was evidence enough to justify a verdict against them for the money obtained by Rolston. That Rolston obtained the money upon the forged bonds is undisputed. He absconded immediately afterward, and there is no direct proof that either of these defendants received any of it. The case against them depends mainly upon the evidence of the witness Pettis and wife and Olmstead, all of whom were more or less implicated and concerned in the forgery. Olmstead was the engraver who made the seal used upon the forged bonds, and Pettis was one of the active parties engaged in executing the forgery. He was, at the time of the trial, in prison, under conviction for crime in the State of Massachusetts, and his deposition taken there was

read.  These were discreditable witnesses, but it was for the jury to determine what weight should be given to their evidence.  They had the right to believe them, even if not corroborated.  (*People* v. *Costello*, 1 Den., 83; *Haskins* v. *The People*, 16 N. Y., 344; *People* v. *Dyle*, 21 id., 578; *Dunn* v. *The People*, 29 id., 523.)  But there were various significant circumstances proved by other witnesses tending to corroborate them, which it is needless to take time to refer to.  The principal facts were testified to by Pettis, and without his evidence there would be no case against any of the defendants.  He testified to facts showing that these two defendants were the leaders among those engaged in the conspiracy, and that the others played subordinate parts. They manufactured the forged bonds and mainly controlled them.  Pettis was to have from them a share of the bonds to dispose of, and he was to divide with them the proceeds of such bonds.  Rolston was to take from them some of the bonds to dispose of, and he was to have one-third of the proceeds of such bonds, and each of them was to have one-third.  The jury were authorized from the evidence to find that the forged bonds were delivered to Rolston in pursuance of this arrangement, and that in pursuance thereof he disposed of them to the plaintiff and obtained the $60,000. In doing this, he acted as agent for these two defendants, or for himself and them ; and in either event, they became responsible for his acts.  No matter what he did with the money ; he acted for them when he obtained it, and hence their liability in this form of action was established.  The judge, therefore, did right at the trial in refusing to non-suit the plaintiff, and as to these two defendants, to submit the case to the jury.

But it is claimed on the part of the appellants that the judge at the trial committed various errors in his rulings upon questions of evidence, and in his refusals to charge as requested, and such alleged errors must now be examined. While the charge did not very clearly or explicitly lay down the principles which should have governed the jury in their

decision of the case, it was not excepted to, and hence cannot be complained of here.

The counsel for defendants requested the judge to charge that they must entirely disregard the evidence of Pettis, unless he was sustained and corroborated by credible evidence upon material and relevant facts ; and he so charged. He then requested him to charge that if the jury found from the evidence that Mrs. Pettis was an actor in the alleged forgeries, she must be regarded as an accomplice, and could not be used to sustain Pettis. This was refused. In this there was no error. In this State, as stated above, it is the law that a person charged with crime may be convicted upon the uncorroborated evidence of an accomplice. Such evidence should be carefully scrutinized and generally should be corroborated before it is relied on to produce a conviction. But if the jury believe the facts testified to by an accomplice uncorroborated, they can base their verdict upon it, and the judge presiding at the trial would not be justified in instructing the jury to disregard such evidence. And it must always be within the province of the jury, upon the same principles, to determine how much weight shall be given to the evidence of the wife of the accomplice, or of any other accomplice who is called to testify to corroboratory facts. When two accomplices are called as witnesses, whether more weight should be given to the evidence of two than of one, and whether they corroborate each other, and to what extent, are matters for the jury. The law was, therefore, laid down more favorably to the defendants than they could legally require.

After the judge had charged as requested, that if the jury found from the evidence that either of the witnesses, Mr. Pettis, Mrs. Pettis and Olmstead, had committed perjury in any respect, the entire evidence of such witness should be disregarded, he was requested to charge as follows : " That if the jury found that Robert A. Pinkerton entered into a combination with Pettis to release him from his imprisonment, in consideration of Pettis' incriminating the defendants

Roberts, Gleason and their wives and Corp, and in pursu-ance of such combination has testified untruly as to any facts, they must disregard his evidence;" also, "that if the jury find from the evidence that Pinkerton did not find the seal sworn to in Robert's desk, and that he has testified falsely upon this subject, they must wholly disregard his evidence." There was no error in refusing these requests. I can find no evidence in the case which justified them; and, besides, the jury had already been sufficiently instructed as to the effect upon the evidence of a witness of false swearing by him as to any fact.

The judge was requested to charge the jury that if they found from the evidence that there was any doubt about the fact that Rolston's bank-book, or the fact that the envelope with A. H. Palmer on it was found in Gleason's safe, they should disregard Pinkerton's evidence as to these facts. This was properly refused. He had already fairly instructed the jury upon the matter of doubt, and had instructed them that if they had any doubt about any matter, to give the benefit of the doubt to the defendants. This was more favorable than the defendants could legally require in a civil action. In such an action the plaintiff is not bound to estab-lish any fact so clearly that it shall be free from doubt. All that is required of him is that he shall satisfy the jury by a preponderance of evidence; and he is never called upon to free their minds of all doubt.    *7 Abb. Ref. 357.*

It is sufficient to say, as to the other requests to charge, that I have carefully examined them, and am of opinion that none of them were improperly refused.

There now remains for consideration only the rulings of the judge during the trial upon questions of evidence, so far as they affected the defendants Gleason and Roberts.

It was needful for the plaintiff to establish that Rolston acted for these defendants when he obtained the money of the plaintiff upon the forged bonds. Whether or not Rolston did so act, was the main issue to be tried. As bearing upon this issue, it was competent for the plaintiff to prove the

relations which existed between Rolston and the defendants; that they had entered into a conspiracy to forge these bonds and put them upon the market; that they were jointly concerned in the forging; and any other facts tending to show a scheme to get money from the plaintiff by means of forged bonds. As the case was to be made out under great difficulties, it was proper for the court to allow the plaintiff considerable latitude in marshalling the facts and circumstances bearing upon the issue. The plaintiff had the right to show, under the complaint, that there was a conspiracy, engaged in by the defendants and others, to forge these bonds and to procure this money. It had the right to give any competent evidence to establish the conspiracy; and having established it, it could then prove the acts, admissions and declarations of any one of the conspirators, done and made during the pendency of the criminal enterprise, in pursuance and furtherance thereof and in reference thereto: (1 Greenlf. on Ev., § 111.) Such evidence is received on the theory that the conspirators have jointly assumed to themselves as a body the attributes of individuality, so far as regards the common design, thus rendering whatever is done or said by any one in furtherance of that design a part of the *res gestæ*, and therefore the act of all. It is the same principle of identity with each other that governs in regard to the acts and admissions of agents, when offered in evidence against their principals, and of partners as against the partnership: (3 Greenlf. on Ev., § 94.)

Keeping these principles in view, we have carefully examined the numerous exceptions taken during the progress of the trial; and while quite desirous to uphold a recovery against the two defendants which seems to be meritorious, we are brought to the conclusion that considerable damaging evidence was received in violation of rules, the observance of which cannot with safety be dispensed with in the administration of justice.

The main facts in this case, which it was necessary for the plaintiff to establish, were not undisputed. They were either

disputed upon the evidence given on behalf of the defendants, or were testified to by discreditable witnesses on the part of the plaintiff. Upon the whole case the jury could have found for the defendants, and their verdict could not have been disturbed as against the evidence or the weight thereof. In such a case it is impossible to say that improper evidence, damaging in its character, may be disregarded as harmless.

Mrs Pettis, while under examination on the part of the plaintiff, testified that upon one occasion she called at the house of Mr. Gleason and found him, her husband and Mr. Corp, and perhaps Mrs. Gleason, locked in a room together, under suspicious circumstances, which she detailed. She then returned home, and her husband came home in the evening; and as to what took place then she testified as follows : " I made a very strict inquiry what he was doing, and demanded explanation why he locked the door. He said : ' Mr. and Mrs. Roberts are very much opposed to you ; you threatened to expose Mrs. Roberts when you compelled her to put up something for my bail, and Mr. Roberts considers you a dangerous woman to know any of his business, and it is not likely they would want you in the house when they were putting seals on counterfeit bonds. I never want you to go near these people again.' I think he said they were Buffalo and Erie ; I would not be sure what he said, but I think he mentioned the name of the bonds." The evidence was objected to as hearsay and incompetent, and was allowed, to show a conspiracy between the defendants. The objection should have been sustained. These were merely the declarations of Pettis as to a past transaction. They had nothing to do with any *res gestœ*, accompanied no act done in furtherance of the criminal enterprise, had nothing to do with the formation of a conspiracy or with carrying it forward. Therefore, within the principles above laid down, the evidence was incompetent. He cannot be regarded as the agent of his co-conspirators to make these declarations.

Mr. Pettis was allowed to testify that in 1854, 1855 and 1856 — from seven to nine years before the transactions in question in this action — the defendant Roberts and his brother kept a saloon in New York, where they dealt in counterfeit money, and that their bar-room was the resort of counterfeiters. This was objected to and received. It was clearly improper to show that Roberts had been engaged in other crimes, or that he harbored and associated with other criminals.

It was error to allow Mrs. Roberts, on her cross-examination, to. testify that evidence was given by some witness, upon some prior trial, referring to a time when her husband, some years before 1873, was arrested and taken from his saloon, that there was found in his saloon several thousand dollars of counterfeit or broken bank bills.

Bangs, a witness for plaintiff, a detective agent, was allowed to testify that some years before 1873 he arrested defendant Roberts and his brother, for robbing Adams Express Company. This was error.

A witness, with whom Mr. and Mrs. Rolston boarded under the name of Stewart, was permitted to testify that he heard the Stewarts speak of the Gleasons as intimate friends, and that he had heard Mrs. Stewart speak about Mrs. Gleason's family a great many times. This was error.

The defendant Roberts was not sworn on the trial of this action. It was claimed that he was in prison, under an order of arrest issued in this action, and that he could not, therefore, be produced. He was sworn as a witness in the prior action of The National Trust Company, and on the trial of this action portions of his cross-examination upon that trial were read by the plaintiff, for the purpose of contradicting Mrs. Roberts as a witness in this action, and also as evidence against Roberts. So far as Roberts stated anything in that evidence pertinent to the issue in this action, such statements were competent evidence against him of the facts stated, and they were competent for no other purpose. Much of the cross-examination read was wholly immaterial

and incompetent. It was incompetent to discredit Mrs.
Roberts; and particularly all that part of it which related
to Mr. Campbell, and other discreditable or criminal trans-
actions of Roberts, was improper, as he was not a witness in
this action.

On the cross-examination of Mrs. Pettis the defendants
offered to show that upon a material matter she testified
differently before the grand jury, and the offer was excluded.
This was error. There is no rule of law, or principle of
public policy, which prohibits a party from asking an adverse
witness whether he did not testify differently before a grand
jury from the evidence given by him upon the pending
trial. Even a grand juror may be called for that purpose :
(3 R. S., 1019, § 31 [6th ed.].)

These are not all the errors which I think I have found,
but I have now gone far enough to show that this judgment
must be reversed. We cannot overlook such errors because
the trial has been long and the evidence is voluminous and
the objections and exceptions are numerous. Whether the
trial be long or short, or the exceptions be few or many,
every party has the right to demand that he shall not be
prejudiced by improper evidence.

The judgment must be reversed and new trial granted,
costs to abide event.

All concur.

Judgment reversed.