ADOLPH J. LANG, Appellant, v. BENJAMIN FRIEDMAN, Respondent.

St. Louis Court of Appeals, July 2, 1912.

1. **MONEY HAD AND RECEIVED: Necessity of Showing Defendant's Receipt of Money: Principal and Agent.** The agent of a real estate broker, who negotiated, on behalf of his principal, a sale of land, was not liable to the purchaser for a part of the purchase price which the latter paid directly to the broker, in an action for money had and received, although the deed delivered to the purchaser was a forgery, since defendant would be liable in that form of action only in the event he had received the amount sued for, or his principal had received it for him or for their joint benefit.

2. **PRINCIPAL AND AGENT: Money Had and Received: Liability of Agent: Payment to Principal.** The agent of a real estate broker, who negotiated, on behalf of his principal, a sale of land, was not liable to the purchaser, in an action for money had and received, for a part of the purchase price paid to him and by him turned over to his principal without knowledge that the deed delivered to the purchaser by his principal was a forgery, since an agent who receives money for his principal is relieved from liability if he pays over such money to his principal without notice of any claim thereto on the part of the person from whom he received it.

3. **TRIAL PRACTICE: Demurrer to Evidence.** Where the evidence on an issue of fact is substantially conflicting, it should be submitted to the jury.

Appeal from St. Louis City Circuit Court.—*Hon. Charles Claflin Allen,* Judge.

AFFIRMED.

*E. P. Johnson* for appellant.

(1) The action for money had and received is favored in law, embracing equitable as well as legal doctrines, and lies where the defendant has received or obtained possession of the money of the plaintiff, which, in equity and good conscience he ought to pay over to the plaintiff. Banking Co. v. Com. Co., 195 Mo. 262; Greenleaf on Evidence, sec. 117. (2) And the above includes and makes liable for the whole amount every person interested in or who participates in the transaction, or who receives any portion of the money, or for whom any portion of it is received, as by an agent, although the agent embezzles it and never pays it over to his principal. Trust Co. v. Gleason, 77 N. Y. 400; Indem. Co. v. Gleason, 78 N. Y. 503; Bank v. Bank, 32 Hun (N. Y.) 105; Story v. Robertson, 98 N. W. Rep. (Neb.) 825; Clay v. Waters, 161 Fed Rep. 815. (3) Money stolen, fraudulently obtained or wrongfully converted to another's use may be recovered as money had and received, not only immediately against the tortfeasor, but against any one into whose possession it may be traced, at least until it reaches the hands of a holder for value without notice. Keener on Quasi-Contracts, 181, 183. And one of several tortfeasors is liable for at least the amount received by him in an action for money had and received and the transfer of the property received by him in whole or in part cannot reduce the amount of his liability. Keener on Quasi-Contracts, 201, 203. And this is true irrespective of the knowledge of the defendant or defendants of the wrong by which it was originally obtained. Blake v. Bank, 219 Mo. 644; Banking Co. v. Com. Co., 195 Mo. 262; Johnson-Brinkman Co. v. Bank, 116 Mo. 558.

*Andrew Johnson* for respondent.

(1) In an action for money had and received, the defendant is only liable for money actually received by him and which in equity and good conscience, he ought to pay the plaintiff. Com. Co. v. Annan, 81 Mo. App. 572; Crane v. Murray, 106 Mo. App. 697; Bank v. Orthwein, 160 Mo. App. 369.   (2) The agent who receives money for his principal and pays same over to him in good faith before he receives notice not to make such payment, believing him entitled to it, is not liable to the person from whom the money is received. Leake on Contracts (5 Ed.), p. 72; Butler v. Livermore, 52 Barb. (N. Y.) 570; Mechem on Agency, sec. 561; 27 Cyc., 869.   (3) The respondent was not agent of plaintiff and would not be liable to him for negligence, and in any event could not be held for damages for negligence in an action for money had and received, and it is clear from the evidence that Friedman did not at any time represent himself as owner of the lots in question, as it is equally clear that Lowenstein knew and understood all the time that Friedman was merely acting as a broker in offering the lots.   Doman v. Pendleton, 148 Mo. App. 489.

STATEMENT.—The plaintiff, Adolph J. Lang, brought this, an action for money had and received, against Alfred W. Syrett and Benjamin Friedman. Syrett not being found, the petition was dismissed as to him and the plaintiff proceeded against Friedman alone.   A trial being had, the jury returned a verdict for the defendant, and judgment being entered thereon the plaintiff has appealed.

It appears from the evidence that Lang and Friedman, the latter a real estate broker, each had deskroom in the office of one Lowenstein, a real estate agent.   One day Friedman was met by Syrett, a real estate agent, who asked him if he was open for a bar-

gain. Friedman asked him where it was and Syrett told him. Friedman looked at the property, some vacant lots, and thought they were cheap. Syrett said he would give him fifty dollars for selling them. Going back to the office, Friedman told Lowenstein that he had seen a bargain in property but had all that he, himself, could carry. Lang, who was present, became interested and told Lowenstein to go and look at the lots, saying if they were cheap he, Lang, might buy them. Lowenstein and Friedman then went to look at the lots. At this time Friedman did not know who owned them; neither did he, himself, profess to own them. He merely represented that they had been offered to him, without mentioning by whom. As Lowenstein expressed it in his testimony, "There was no conversation as to whom Friedman was offering the property for. It was offered to Mr. Lang as a proposition that was offered to Friedman and the latter was going to turn it over to Lang, if he wanted to purchase it. Friedman did not represent it as his own property; he was doing business as a real estate agent and helping to negotiate sales of real estate." Having seen the property Lowenstein reported back to Lang that it was indeed a bargain. Lang said he would buy the lots and thereupon appointed Lowenstein as his agent with full power to buy them and attend to all the papers and details, as well as to advance and pay that portion of the purchase price which was to be paid in cash, some $705. Because of Lowenstein's greater experience, Friedman, too, left the whole matter with him to look after and close the transaction. No earnest money had been exacted in the transaction, but on January 10, 1907, the day before the deal was finally closed, Friedman received a telephone call from the Maplewood Bank, saying it had an order from Syrett for $250 which it would like to have Friedman see paid when the deal was closed. It promised to mail the order to Friedman. Friedman then went to

Lowenstein and got a check for $250 on account of the purchase price, the check being made payable to Friedman. Lowenstein's testimony tends to prove that Friedman did not disclose his connection with Syrett until after his check was given, but Friedman testified in regard to obtaining this check: "I think I told Mr. Lowenstein *for what purpose* it was and that it was a courtesy for the bank, *and for whose account.* It has been so long I don't remember what I said to Lowenstein. Of course I mentioned to him it was for $250. I got an order from the Maplewood Bank, and from whom I got that order." Friedman deposited this check to his own account in bank and on the next day, January 11, 1907, mailed his own check to the Maplewood Bank in payment of Syrett's order. Syrett had gotten a certificate of title from the title investigator and this was brought to Lowenstein at his office. It showed the title to be in one Wildberger and wife, subject to certain deeds of trust, which was according to the previous understanding of the parties. On January 11, 1907, Lowenstein made out a check for $455 with which to pay the balance of that portion of the purchase price which was to be paid in cash. This check he made out and signed at his office. It was made payable to Syrett. There can be no doubt that at this time Lowenstein fully understood Friedman's connection with Syrett, that is, that Syrett was purporting to represent Wildberger and that Friedman was a subagent for Syrett. Lowenstein then went with Friedman to Syrett's office where the deeds which Lowenstein had prepared were found, apparently duly executed and acknowledged. The persons present at this time were Syrett, Lowenstein and Friedman. Lowenstein compared the deeds with the certificate of title and on his suggestion Syrett inserted mention in them of the deeds of trust. Lowenstein had Syrett endorse the check for $455 and took it to the bank upon which it was drawn and procured a cashier's check

payable to Syrett. He then went with Friedman back to Syrett's office and the three of them went with the deeds and cashier's check to the title investigator's office, where Syrett left the deeds and Lowenstein left the check with instructions to the title investigator to record it and then further examine the record title and if found satisfactory, that is, in Lang, to deliver the check to Syrett and the deeds to Lowenstein. All this was done and Syrett received and cashed the check and Lowenstein received the deeds after they had been recorded.

Several months afterwards Friedman heard rumors on the street that Syrett was a forger and communicated the rumor to Lowenstein. Lowenstein made an investigation and found that the deeds to Lang were forgeries. Up to this time Friedman was not cognizant and had no reason to believe that the deeds were forgeries or that any fraud was contemplated or committed. He and Lang were equally innocent in that respect. And, of course, Friedman had no notice or idea that the plaintiff had any claim thereto when the money was paid either to Syrett or to the Maplewood Bank. Neither is there any suggestion that Friedman profited or was to profit out of the transaction except for his fifty dollar commission, and that he never received. Over two years after the forgery became known to him, Lang brought this suit. It was shown by the evidence that Lang reimbursed Lowenstein that $250 he had first paid to Friedman and Friedman had paid over to the Maplewood Bank on Syrett's order, but the court excluded evidence that Lang reimbursed Lowenstein the $455 which Lowenstein paid directly to Syrett. (It is interesting to note, though it has no apparent bearing on this case, that Lang made the Wildbergers give him $100 for a quit claim deed to remove the cloud upon their title cast by the forgery.)

At the instance of the plaintiff the court instructed the jury as follows:

"I.   The jury are instructed that if they find and believe from the preponderance or greater weight of the evidence that the plaintiff paid to the defendant Friedman, two hundred and fifty dollars as part of the purchase price of the lots mentioned in the evidence and that deeds to said lots were delivered to the plaintiff and thereafter were found to be forged deeds, and if the jury further find from the evidence that said sum of two hundred and fifty dollars was received by the defendant as a principal in the transaction and for his own use, they will find a verdict in favor of the plaintiff for not exceeding the sum of two hundred and fifty dollars with interest at the rate of six per cent per annum from the time you may believe from the evidence the plaintiff made a demand on the said defendant, if you believe from the evidence that such a demand was made; otherwise from the time of the filing of this suit, to-wit, November 18, 1909."

At the instance of the defendant the court instructed the jury as follows:

"The court instructs the jury that if they believe from the evidence in this case that defendant, Benjamin Friedman, acted as agent for A. W. Syrett, in the transaction with plaintiff, regarding the Greenwood lots, and if you further believe from the evidence that this fact was known to plaintiff's agent, Lowenstein, before the transaction was closed, or any money paid on account of same, and if you further believe from the evidence, that defendant paid to R. L. Wilson, cashier of the Bank of Maplewood, upon the order of A. W. Syrett, the sum of $250 received by defendant from Lowenstein, and that defendant at the time of such payment had no knowledge that the deeds to plaintiff were forged, then your verdict should be for the defendant."

Plaintiff offered, and the court refused to give, four other instructions. Of these, instruction number 4 authorized a verdict for plaintiff if the jury found "that said defendant.showed said lots to said Lowenstein and represented them to be the property of Mary Wildberger and John W. Wildberger respectively, and agreed upon a sale of the same to plaintiff through said Lowenstein for the sum of seven hundred dollars, subject to certain deeds of trust; that thereupon said Lowenstein paid by check to said defendant the sum of two hundred and fifty dollars on the purchase price of said lots; that thereafter said defendant exhibited to said Lowenstein the abstract of title and deeds for said lots, read in evidence by plaintiff, and at his request or at his instance said Lowentein paid by check to one Alfred W. Syrett, for plaintiff, the further sum of four hundred and fifty-five dollars, the balance of the purchase price of said lots and an abstract of title thereof, and received for plaintiff said deeds and abstract of title; that neither of said deeds were signed or acknowledged by either said Mary Wildberger or John W. Wildberger and were forged." Number 5 authorized such verdict if the jury found from the evidence "that defendant Benjamin Friedman aided Alfred W. Syrett in the negotiation" of the sale of the lots to plaintiff; "that an agreement for such sale to plaintiff of said lots was made and that plaintiff through his representative paid the purchase price agreed on for said lots in part by a check drawn in favor of said defendant, Friedman, and in part by a check drawn in favor of said Syrett, and plaintiff, through either said Syrett or defendant, received in consideration therefor deeds to said lots that were forged." Number 6 was a peremptory instruction to find for plaintiff. Number 7 advised the jury "that it is immaterial whether said defendant had any knowl-edge or notice that the deeds read in evidence by plaintiff were forged, or that defendant did not receive in

person all the money paid as a consideration for said deeds.''

CAULFIELD, J. (after stating the facts).—I. It is clear that under the law and the evidence plaintiff had no right to recover from Friedman the $455 which was not received by Friedman but was paid directly to Syrett by Lang's agent, and as instructions numbered 4, 5 and 7, offered by the plaintiff and refused by the court, proceeded on the theory that he could so recover, the trial court did not err in refusing them. This is not an action for damages against the defendant and cannot be treated as such. It is purely *ex contractu*, assumpsit for money had and received, to mantain which it was necessary for plaintiff to establish that defendant had received his money, or that Syrett had received it as defendant's agent or for their joint benefit. It was not sufficient to show merely that defendant had acquiesced in or requested the payment to be made to Syrett, the plaintiff not being misled into the belief that he was thereby making a payment to defendant. [N. Y. Guar. & Ind. Co. v. Gleason et al., 78 N. Y. 503; 2 Ency. of Pleading & Practice, p. 1021, and cases cited; Keener on Quasi-Contracts, p. 160; see, also, Roemer Com. Co. v. Annan, 81 Mo. App. 572.]

II. The court rightly authorized a verdict for defendant if the jury found that he received the $250 as the disclosed agent of Syrett, and paid it over on his principal's order before he had knowledge that the deeds to plaintiff were forged. ''It is a complete defense to to an action brought against an agent for money, which was voluntarily paid to him *as agent,* that he has paid the money over to his principal without notice of any claim thereto on the part of the plaintiff, from whom he received the money, the reason therefor is that in legal contemplation the payment

was made by the plaintiff to the defendant's principal; and if in addition thereto the money has in fact reached the principal's hands, without notice on the part of the agent that he should not pay the same over, then, since the money has reached the very person to whom the plaintiff intended to pay it, in circumstances implying nothing inequitable on the part of the defendant in paying it over, the plaintiff should assert his claim against the defendant's principal, and not against the defendant." [Keener on Quasi-Contracts, p. 62. See, also, 27 Cyc. 869; Leake on Contracts (5 Ed.), p. 72; Mechem on Agency, sec. 561; Butler v. Livermore, 52 Barb. (N. Y.) 570; Hearsey v. Boyd, 7 Johns. 182; Roemer Com. Co. v. Annan, 81 Mo. App. 572.] Our decision in St. Charles Savings Bank v. Orthwein, 160 Mo. App. 369, 140 S. W. 921, is not to be construed as holding contrary to what is above quoted, for there the alleged agent had notice at the time that it was receiving the money of plaintiff wrongfully. In this case it is uncontroverted that the $250 was voluntarily paid to Friedman by Lang's agent and that Friedman paid the money over to the Maplewood Bank on an order of Syrett, his principal, without notice of any claim thereto on the part of Lang and without any knowledge of the forgery. The only disputed question was whether Friedman had disclosed his agency and the identity of his principal when he received the $250 from Lang's agent. This question was submitted to the jury on what we deem substantial evidence and the jury has found the fact for the defendant. In this view of the case there was no error in refusing plaintiff's peremptory instruction.

The judgment is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.