Joseph H. Cohen, Respondent, *v.* Charles B. Toole, Appellant, Impleaded with John B. G. Rinehart and Martin C. Wright, Defendants.

Joseph H. Cohen, Respondent, *v.* Martin C. Wright, Appellant, Impleaded with Charles B. Toole and John B. G. Rinehart, Defendants.

First Department, July 11, 1918.

**Fraud — action for damages resulting from fraudulent conspiracy to sell stock in fictitious corporation — evidence — competency of admissions by co-conspirator by way of narrative of past facts.**

Where in an action to recover damages claimed to have been suffered by the plaintiff as the result of a fraudulent conspiracy entered into by the defendants to sell to the plaintiff certain stock of a film company, it appeared that the whole transaction was a deliberate swindle and that

the company was a mere paper corporation, evidence of statements made subsequent to the completion of the transaction between the defendant R. and the defendant W. in which R. had said to W. that he was in danger of going to jail because he had secured money from the plaintiff, and that W. and G. & T. were under an obligation to save him because they had kept most of the money, and that W. then went to G. & T.'s office and returned with money which was used for the purpose of obtaining an option on the picture, was competent as against W., because it was a statement made in his presence and apparently acquiesced in by him, but it was not competent as against T., because after the conspiracy has come to an end, the admissions by one conspirator by way of narrative of past facts are not admissible against the other, and the jury should have been instructed when the evidence was received that they must not consider it as against T.

SEPARATE APPEALS by the defendants, Charles B. Toole and Martin C. Wright, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 29th day of January, 1918, upon the verdict of a jury for $15,000, and also an appeal by the defendant Charles B. Toole from an order entered in said clerk's office on the 24th day of January, 1918, denying his motion for a new trial made upon the minutes. The defendant Martin C. Wright appeals also from an order entered in said clerk's office on the 6th day of February, 1918, denying his motion for a new trial made upon the minutes.

*Morgan J. O'Brien* of counsel [*E. J. Freedman* with him on the brief; *Jacob M. Kram*, attorney], for the appellant Toole.

*J. Sidney Bernstein*, for the appellant Wright.

*Elbridge L. Adams*, for the respondent.

PAGE, J.:

The action is brought to recover $20,000 damages claimed to have been suffered by the plaintiff as the result of a fraudulent conspiracy entered into by the defendants to sell to the plaintiff certain stock of the Globe Co-operative Film Company belonging to the defendant Rinehart and divide the proceeds between them. The plaintiff, at the time a young man of about twenty-four years, having a little ready

money, became convinced at the time of the European War that he could increase his store of worldly goods by buying cotton. Not knowing any one in the stock or cotton brokerage business, he went to a friend who introduced him to Walter Content, of the firm of H. Content & Co. Content introduced the plaintiff to the defendant Charles B. Toole, a member of the firm of Gross & Toole, who had offices with H. Content & Co. and attended to the cotton business. As a result, plaintiff was induced, instead of buying cotton outright, to speculate in cotton futures and also upon the stock market. Gross & Toole had in their employ the defendant Wright. The plaintiff revealed to Wright that he had inherited some $20,000 from his grandfather, and plaintiff testified that the defendant Wright represented to him that the Globe Co-operative Film Company owned or controlled a South American exploration moving picture, the value of which was very great and was comparable in that respect with the celebrated Rainey African hunt picture out of which Rainey had made $1,000,000; that Wright had bought several thousand dollars worth of the stock for his mother and that he was using all his money for purchase of the stock as an investment; that the stock was being sold all over the country for $10 per share and could not be purchased for less, but that the defendant Rinehart, who was one of the directors of the company, had authorized him to sell a few shares of stock at $6. The plaintiff states that these representations were made in the office of Gross & Toole and, some of them at least, in Toole's presence and Toole participated in the conversation. A private exhibition of the picture was given and attended by the plaintiff and the defendants Wright and Toole. After the exhibition the three adjourned to a restaurant where the picture was discussed, and Toole stated that he would like to take some of the stock himself but that his partnership agreement prevented him from buying any stocks; that the stock was about to be listed upon the curb; that if plaintiff purchased the stock, he, Toole, would recommend it to his clients, and that the company would have to maintain the market, and that plaintiff could within a short time sell the stock for from $12 to $13 a share, and hat the Globe Co-operative Film Company owned or con-

trolled the picture that they had seen. Wright loaned plaintiff on his note $500, which he stated he would give to Rinehart on account and secure 500 shares for him. In a day or two thereafter the plaintiff secured from the Title Guarantee and Trust Company, where he had his account, the necessary money and paid the $3,000. In the meantime the defendants Wright and Toole had been talking to the plaintiff of his great opportunity to make money and, relying upon the representations that they had made, he was induced to invest $10,000 more. This was after a night that Wright and plaintiff had spent at Toole's house. Wright and the plaintiff went over to the Title Guarantee and Trust Company, and there plaintiff secured the sum of $24,000 in cash. The remaining $7,600 plaintiff was unable to get that day because he had to negotiate a loan on certain guaranteed mortgages that were held by the title company. He testifies that on the way back to New York Wright telephoned, and when they arrived at Rinehart's office Toole was there waiting for them and Toole introduced plaintiff to Rinehart; that Rinehart at first demurred at selling the stock at $6 a share, but when Toole stated that that was the price at which they had agreed to let the plaintiff have the stock, he reluctantly consented to accept the money and agreed to deposit the stock in escrow with Wright to be delivered to plaintiff on payment of the $7,600. This payment was made and plaintiff received 2,170 shares of the stock of the company. After the money was paid Wright disappeared from Toole's office. The stock was not listed upon the curb, and plaintiff became suspicious and started an investigation into the company when it developed that the company was a mere paper corporation; that it neither owned nor controlled nor had any option upon the picture which had been exhibited to the plaintiff, and in fact the whole transaction was a very common deliberate swindle. Of course, Toole and Wright deny making the representations, but the evidence offered by the plaintiff, which was accepted by the jury, sustains the verdict against them.

Evidence was received of statements made (subsequent to the completion of the transaction) between Rinehart and Wright in which Rinehart had said to Wright that he was in danger of going to jail from the fact of this money having been

got from plaintiff, and that Wright and Gross & Toole were under an obligation to save him because they had kept most of the money, and that Wright then went over to Gross & Toole's office and returned with $600, which was used for the purpose of obtaining an option on this motion picture. This evidence was competent as against Wright, because it was a statement made in Wright's presence and apparently acquiesced in by him, but it was not competent as against Toole, because after a conspiracy has come to an end the admissions of one conspirator by way of narrative of past facts are not admissible against the other. (*Logan* v. *United States,* 144 U. S. 309; *New York Guaranty & Indemnity Co.* v. *Gleason,* 78 N. Y. 503, 514; *Garnsey* v. *Rhodes,* 138 id. 461, 465.) Objection was made to the reception of this evidence as not competent as against Toole, and a request was made that the justice instruct the jury that they could not consider this evidence as against the defendant Toole, which was declined and exceptions duly taken.

The evidence was very prejudicial to the defendant Toole. Being admissible as against the defendant Wright it was properly received. The jury should have been instructed, when the evidence was received, that they must not consider it as against Toole. This requires a reversal of the judgment against the defendant Toole.

The judgment against the defendant Wright should be affirmed, with costs. Action ordered severed and judgment against the defendant Toole reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN, SMITH and SHEARN, JJ., concurred.

In the first action: Judgment and order reversed and new trial ordered, with costs to appellant to abide event. In the second action: Judgment and order affirmed, with costs.